HENRIETTA C. KELLER *vs.* FRANCIS A. ASHFORD.

EQUITY. No. 6243.

{ Decided February 16, 1885.
{ The CHIEF JUSTICE and Justices MAC ARTHUR and JAMES sitting.

1. A condition introduced in a deed signed only by the grantor that the grantee shall assume the payment of a certain promissory note, secured by a prior deed upon the property conveyed, is not binding upon the grantee unless the conveyance and its conditions are brought to his knowledge and he accepts the property thereunder.

2. Payment of interest on the note and the collection of the rents are not inconsistent with the theory that the grantee took the property under the supposition that it had been transferred to him merely as security for an indebtedness due him, especially when there is no evidence that he had any knowledge of the deed and its condition.

STATEMENT OF THE CASE.

In this case the complainant filed a bill in equity setting forth in substance:

1. That on the 17th day of August, A. D. 1875, one Archie Thompson, being seized in fee of lot numbered five in a subdivision of part of square eight hundred and eighty-nine, by his certain deed of trust of that date, conveyed the said lot of ground, together with its improvements, to one Martin M. Rohrer, in trust to secure his certain note for $1,500, payable in three years after the date thereof, to the order of Abner. B. Kelly, with interest at the rate of ten per cent. per annum until paid.

2. That on the 21st day of February, A. D., 1876, the said Thompson and wife conveyed the same lot above described to one William A. Gordon, in trust to secure his certain note for $2,000, payable in one year after the date thereof, with interest at the rate of eight per cent. per annum until paid, to the order of Moses Kelly, who endorsed the same to complainant, who is the present owner and holder of said note.

3. That afterwards, to wit, on the first day of January, A. D. 1877, the said Thompson and wife, by deed in fee, conveyed the said lot of ground, with its improvements (to-

gether with other lots in the same square), to Francis A. Ashford, the defendant to this bill, subject, however, to certain encumbrances resting thereon, to wit, the two encumbrances hereinbefore mentioned, payment of both of which said defendant Ashford assumed, and for that purpose withheld and reserved from the consideration by him paid for said property so much thereof as was then an equivalent of, or was necessary to cancel and settle the said encumbrances.

4. That said defendant, Ashford, accepted said deed in fee, with its provisions imposing upon him the personal obligation aforesaid to pay said encumbrances, and by virtue thereof entered into possession of the property, and not only collected the rents and profits arising therefrom from the date of said deed until the sale made under the provisions of the first trust, but also paid interest on said first mortgage to the holder thereof, and likewise paid the taxes charged against the same.

5. That complainant, through her agent, made demand on said Ashford for the payment of the note secured as aforesaid and by her held, and that said defendant, whilst he did not deny his liability to pay the same, yet neglected so to do, and now refuses to pay the same.

6. That in pursuance of the provisions of the first trust, the trustee therein named, after previous advertisement, exposed to public sale said lot five, and, on the same day, sold the same to John C. Harkness, trustee, at and for the sum of $1,700, a sum which was insufficient to satisfy and liquidate the debt secured by said trust, by reason whereof the lien of complainant for the amount of her note for $2,000, and interest thereon, has become wholly extinct, a deed having passed from said trustee to the purchaser at said sale.

Wherefore complainant, being advised that the acceptance by said Ashford of the said deed in fee, imposing upon him and charging him personally with the payment of the encumbrances resting thereon at the time of his said purchase, and the further fact that he withheld from the pur-

chase money or consideration paid for said property, so much thereof as was then necessary to settle and liquidate the said encumbrances, or was, in the negotiation involved in said transfer in fee, or in any manner credited with an amount equivalent to the said encumbrances by him assumed, was an appropriation by him of said part of said purchase money, or of the amount so credited, as aforesaid, to the use of complainant, and constituted a fund by him held in trust for her benefit, which this court will enforce in her behalf.

The bill concluded with a prayer, that a decree be made in favor of complainant against said Ashford for the amount of the note by her held and secured by the second trust, assumed as aforesaid by said Ashford, together with the interest thereon according to its tenor, besides costs.

Accompanying the bill was the deed from Thompson to Ashford filed as an exhibit. It was an ordinary deed, conveying the property in question, "subject, however, to certain encumbrances now resting thereon, payment of which is assumed by said party of the second part."

The defendant filed his answer, admitting the existence of the first trust and the sale thereunder.

He admitted also the execution of the deed to him, but denied that he ever assumed the payment of the two incumbrances mentioned, or that he for that purpose withheld and reserved from the consideration alleged in the bill to have been paid for the property so much thereof as was then an equivalent of, or was then necessary to cancel and settle the said encumbrances.

He denied that he accepted the deed with its provisions imposing upon him the personal obligation to pay said encumbrances, or that he ever accepted said deed in any way, and denied that by virtue of said alleged deed he entered into possession of said property. He admitted collecting the rents of the property, and also that he paid interest on the first encumbrance and taxes, but only under the circumstances hereinafter stated, and not in consequence of an acceptance of said deed with an agreement to pay either of the encumbrances mentioned.

He admitted that demand was made by the plaintiff's solicitor in this suit, Mr. Boarman, upon him for payment of the note, averred that the demand was made many months after made. He avers that he did deny his liability of the note, and he informed said solicitor that he did not intend to pay it. and did not intend to keep the property He that he ever in any way admitted, liability on his part to plain Boarman, in his earlier interviews with this defendant, insist or even suggest that the defendant was personally liable to the plaintiff on the encumbrance alleged to be held by him.

Further answering as to the matters referred to, he averred the truth to be as follows:

That in the month of February, 1877, and a month or more after the said deed had been recorded, Moses Kelly, mentioned in said bill, stated to this defendant that he, Kelly, had had conveyed to this defendant lots on H street, between Seventh and Eighth.

That although there was then an encumbrance on said houses, he (Kelly) thought the equity in said houses was worth something, and that he thought he would sell them in such a way as to pay the defendant some part of his (Kelly's) indebtedness to defendant, and told the defendant that he might collect the rents and apply them to the payment of the said indebtedness to defendant, but that it would be necessary for defendant to pay the interest due to Mr. Harkness on the note held by him which was secured on said property, as he, Harkness, was pushing for it.

This defendant accordingly paid to said Harkness $150 for interest then due, and in August, 1877, paid said Harkness the further sum of $75 for interest on said note. The defendant, in the meantime also paid some taxes on said property, which were in arrear, this defendant not knowing until after the said first payments were made that any other encumbrance was on the property. Said Kelly was at the time he told defendant said houses had been conveyed to

defendant, and from thenceforth has been and still is, justly and *bona fide* indebted to defendant for money advanced and loaned to him, in a sum far exceeding the value of said four houses and lots; and defendant, being willing to receive payment of said indebtedness, so far as he could, by collecting the rents from said property and applying the same to the said debt due from Kelly to himself, collected said rents, or so much of them as he was able to collect from February, 1877, to the said sale to Harkness; but this defendant had no understanding or agreement with said Kelly, or with any one, that he would assume or would pay the said encumbrance of $1,500 on said property, or any other encumbrance thereon. And of the existence of the deed of trust to Gordon or the note secured thereby, the defendant hrd no knowledge, notice or intimation until eight or ten months after he was informed that the property had been conveyed to him.

That he has never seen, read, or heard read, the said leged deed to him, or a copy thereof, nor was he ever aware that said alleged deed contained any clause or provision making him, in express terms or otherwise, assume the encumbrances therein, or requiring him to pay the same, until a short time since, when notified that such was the fact.

The only knowledge the defendant had of there being a deed to him or of the terms thereof, until long after the same had been recorded, was what he learned from said Kelly as aforesaid.

That defendant did not and does not know Archie Thompson or his wife, and never had any business relations with them, or either of them, of any kind. That no consideration moved from him to said Thompson or wife for said deed. That if any agreement was made by said Kelly with said Thompson whereby said property should be conveyed to this defendant, and that this defendant should assume and pay said encumbrances, which defendant denies, such agreement was unknown to and unauthorized by this defendant, and this defendant avers that it was not the intention of the said Thompson who executed said deed, or of

the said Kelly at whose instance it was prepared, executed and recorded, that this defendant should be made to pay said encumbrances; and the defendant is informed, and so avers, that the said Thompson has hitherto and still refuses to hold this defendant responsible for the payment of plaintiff's claim, or to bring action or suit against this defendant. The said Thompson, well knowing that the intention was to convey to defendant only the equity in said property without in any way making him personally liable for the debts secured on said property, and such defendant avers the fact to be, and he so understood the effect and purpose of the conveyance of said houses when he assumed to collect rents thereof.

When payment of the note alleged to be held by plaintiff was demanded of him, which was prior to the sale to Harkness, defendant refused to pay the same, informing the plaintiff's said solicitor that he knew nothing of the encumbrance represented by said solicitor until long after the said deed from Thompson and wife to defendant was recorded, and that he did not intend to hold the said property with the encumbrances thereon, and offered to convey all his interest therein to plaintiff without any consideration being paid by her therefor; which offer (as defendant has been informed) the plaintiff was willing to accept, but was prevented therefrom by said solicitor, although the interest and taxes, as aforesaid, paid by this defendant exceeded the rents collected by him, and he had derived no benefit or profit whatever from said conveyance.

That plaintiff (as defendant is informed), or her said solicitor, attended said sale, or knew that the same was to take place, and knowing, also, that defendant had refused to pay said note, and had informed said solicitor that he, defendant, did not intend to keep said house, said plaintiff neglected to take any means to protect herself against loss by reason of a sacrifice of said house and lot, and allowed the same to be sold at a great sacrifice, the same not bringing more than one-half its value—and this, although the plaintiff's said solicitor admitted that she had funds

57

with which she could have taken up said debt held by Harkness. And the defendant is informed, and so avers, that plaintiff became the holder of said note long before, if at all, said pretended deed to defendant was made.

And further, that if the matters stated do give the plaintiff any cause of complaint against the defendant, the same is triable and determinable at law, and ought not to be inquired of by this court.

A replication was filed; both parties took testimony; and on the hearing the court below dismissed the bill; and the plaintiff appealed to the General Term.

W. D. DAVIDGE and W. W. BOARMAN for plaintiffs:

The deed containing the covenant that the grantee, Ashford, is to assume the payment of the encumbrances is a deed poll.

A deed executed by one party only, but containing an express covenant on the part of the other to perform certain acts, binds the latter, if he accepts the deed, and takes possession under it as effectually as if he had signed it. Spaulding *vs.* Hallenbeck, 3 N. Y., 204; Trotter *vs.* Hughes, 2 Kernan, 78; Atlantic Dock Co. *vs.* Leavitt, 54 N. Y., 35, and cases cited; 1 Jones on Mortg., 610; 33 Mich., 354; Geo. Rickard *vs.* Sanderson, 41 N. Y., 179; Thorp *vs.* Keokuk Coal Co., 48 N. Y., 253.

. "Where the purchaser of the equity of redemption covenants or promises the grantor to pay off an encumbrance upon the land, this duty or obligation enures for the benefit of the mortgagee or creditor in the encumbrance, and he may, in equity, compel such purchaser to respond directly to him." Story's Equity Juris. (10th ed.), sec. 1016, *d*; Klapworth *vs.* Dressler, 2 Beasley (N. J.), 62.

The doctrine thus declared in the 10th edition of Story's Equity Jurisprudence is sustained, amplified and fortified in the following cases and text books. Burr *vs.* Beers (1861), 24 N. Y., 178; Jones on Mortgages, vol. 1, secs. 748 and 749; 752, 755; Spence Equity Jurisprudence, vol. 2, p. 286; Curtis *vs.* Tyler, 9 Paige Ch., 431, 446; King *vs.* Whitely,

10 Paige Uh., 597, and cases cited; Trotter *vs.* Hughes, 12 N. Y., 74; Garnsey *vs.* Rogers, 47 N. Y., 233; Thorp *vs.* Keokuk Coal Co., 48 N. Y., 253; Campbell *vs.* Smith, 71 N. Y., 26; 27 N. J. Eq., 656; 23 N. J. Eq., 150; 4 N. J. Eq., 314, 458; 19 N. J. Eq., 571; 2 Sandf. Ch., 478, 278; Hoff's Appeal, 24 Penn. St., 200; 13 Wright, 51–86; Gregory *vs.* Parker, 3 Merivale, 582; Tomlinson *vs.* Gill, 1 Ambler Ch., 330; 1 Eden, 77; 3 Swanst., 417; Atlantic Dock Co. *vs.* Leavitt, 54 N. Y., 35 ; 1 Lea (Tenn.), 534; 11 Iowa, 86; Vrooman *vs.* Turner, 69 N. Y., 280; Fisk *vs.* Tolman, 124 Mass., 254; Heid *vs.* Freeland (1879), 2 N. J. Law Journal, 257 ; Morris' Appeal, Penn. Sup. Ct.; Met. 3, 1879; 19 Abbott's Law Journal, 257; 44 Mich., 10; 57 How. Prac. Rep., 383; 26 Am. Rep., 660; see note, where the whole doctrine is fully discussed; 70 Missouri St., and cases cited.

No candid mind can read the record in this case without being convinced that the defendant, Ashford, had actual knowledge and notice of the clause in the deed holding him liable to pay the encumbrances, and that after such knowledge and notice, he exercised acts of ownership over the property, collected and appropriated to his use the rents and profits, put tenants in possession, and conveyed a portion of the property described in the deed, in fee simple, to one Duncan.

But assuming that he had not actual knowledge or notice of the clause in question, yet having accepted the property under the deed, and exercised dominion over it, the law conclusively presume that he was cognizant of the provisions contained in the deed, and he is estopped from denying that he had knowledge and notice of its contents. See 94 U. S., 405; 5 Munf., 160.

APPLEBY & EDMONSTON for defendant:

The doctrine upon which complainant grounds the relief asked is imported from New York, and though sanctioned in some western States, has never been followed in Maryland or in this District. This doctrine is stated by the reporter *in notis* in Binsse *vs.* Paige, 1 Abbott N. Y. Court of

Appeals Decisions, p. 138, to be as follows: Where the deed in terms binds the grantee to pay a mortgage upon which the grantor is personally liable, the mortgage creditor may hold the grantee liable directly to himself, and he says that the rule has been sustained upon several distinct grounds:

1. Where the grantor, being liable for the debt, takes a security to himself, equity will treat it as enuring for the benefit of the creditor. Hence, in his foreclosure, the creditor may join the grantee and have judgment over against him for a deficiency.

2. In other cases, the principle that the act of the parties in leaving the amount of the mortgage in the purchaser's hands as a rebate from the price—in other words, the fact that the price paid was only the value of the equity of redemption, bound the purchaser in equity to pay the mortgage.

3. In still a third class of cases, the principle is relied on, that where A promises B that he will pay C a debt due from B to C, the promise, if founded on a good consideration moving from B, and if accepted by C, may be enforced by him in an action directly against A. The leading case on this principle is Lawrence *vs.* Fox, 20 N. Y., 268, and that case was first followed in the case of a clause in a deed assuming a mortgage in Burr *vs.* Beers, 24 N. Y., 178.

This decision of Burr *vs.* Beers is the established doctrine of New York. It has been cited and followed so often that it will be necessary to give but few of the cases: 43 N. Y., 411; 47 N. Y., 237; 46 N. Y., 460; 64 Barb., 595; 45 How. P., 38, 179; 54 N. Y., 584; 48 N. Y., 257; 8 Hun, 81, 118, 223, 374; 57 N. Y., 469; 43 How. P., 532; 64 N. Y., 43, 119; 47 N. Y., 688; 3 Daly, 234; 52 How. P., 414; 1 Abb. N. C., 99; 11 Hun, 504; 68 N. Y., 358; 69 N. Y., 282; 70 N. Y., 439; 75 N. Y., 342; 73 N. Y., 211; 57 How. P., 382; 35 Sup. Ct., 179; 15 Hun, 404; 71 N. Y., 28, 519.

Actions at law are now invariably brought because the remedy is plain, adequate and complete. The first ground above mentioned by the reporter in Binsse *vs.* Paige, is no

longer the basis of relief; it was the ground of equitable relief only in foreclosure cases. Judge Denio, in Burr *vs.* Beers, says, where the suit is not for foreclosure of a mortgage, and where the mortgagor is not a party, relief cannot be based upon the doctrine of such cases (cited now by complainant) as Curtis *vs.* Tyler, 9 Paige, 432; Halsey *vs.* Reed, 9 Paige, 446; King *vs.* Whitely, 10 Paige, 465, and other cases referred to by Judge Denio. Where there is not a foreclosure suit, the basis for relief is, says the judge, "the broad principle that if one person make a promise to another for the benefit of a third person, that third person may maintain an action upon the promise." Burr *vs.* Beers was an action at law, and cited as stated *supra*, Lawrence *vs.* Fox. The court showed how the earlier cases in equity turned on the construction of a statute. See, also, Garnsy *vs.* Rogers, 47 N. Y., 237, 238.

As the present suit is not for the foreclosure of a mortgage and as the mortgagor is not a party, the relief asked cannot be claimed on the first ground as mentioned in Binsse *vs.* Paige, and as it is not an action at law, the relief asked must be based on the second ground, and the bill of complaint is bottomed on such a ground, but as heretofore shown, there is not a jot or tittle of evidence to give color to the sworn allegation, that enough of purchase money to pay complainant was withheld by Dr. Ashford from the purchase money and is held in trust for her.

The New York doctrine was never applied either in law or equity to the case of a second mortgagee assuming the encumbrances even where the second mortgage was by a deed absolute in form. Garnsy *vs.* Rogers, 47 N. Y., 233.

The present suit shows that Dr. Ashford was virtually a mortgagee.

If an agreement to pay prior encumbrances be inserted in a deed without the knowledge or consent of the grantee, and without the intent of the grantee to pay the same, whether by mistake, or fraud, or ignorance of its effect in law on the part of the grantor, even where the deed be delivered to and accepted by the grantee, the grantee is not

bound thereby. Drury *vs.* Hyde, 111 U. S., 223; Dey Ermand *vs.* Chamberlain, 88 N. Y., 658; Albany Savings Institution *vs.* Burdick, 87 N. Y., 40; Kilmer *vs.* Smith, 77 N. Y., 226; Elliott *rs.* Sackett, 108 U. S., 132.

In a foreclosure suit where purchaser is sought to be held liable for a deficiency, because of a clause in his deed assuming and agreeing to pay the mortgage, the purchaser never having assented to such a claim, he was held not liable. *Ibid.*, 88 N. Y. And it was held that the failure of grantee to examine the deed was not such negligence as to deprive him of relief. *Ibid.*, 87 N. Y.

*A multo fortiori*, should it be held that he is not liable where the deed was never delivered nor as such accepted. See Bull *vs.* Titsworth, 29 N. J. Eq., 73; and Girard Life Ins. and Trust Co. *vs.* Stewart, 86 Penn. St., 89.

The rule of Burr *vs.* Beers, following Lawrence *vs.* Fox, has been followed by the U. S. Supreme Court in Hendrick *vs.* Lindsay et al., 93 U. S., p. 143. The court says: "The right of a party to maintain assumpsit on a promise not under seal, made to another for his benefit, although much controverted, is now the prevailing rule in this country," p. 149; and the same court, in Insurance Company *vs.* Bailey, 13 Wall., 620 and 621, said: "Suits in equity, the Judiciary Act provides, shall not be sustained in either of the courts of the United States in any case where plain, adequate and complete remedy may be had at law, and the same rule is applicable where the suit is prosecuted in the chancery court of this District." That was a District of Columbia case. The court in the same case, p. 621, says: "Much consideration was given to the construction of that section of the Judiciary Act in the case first referred to, and also to the question whether a party seeking to enforce a legal right could resort to equity in the first instance in a controversy where his remedy at law is complete, and the court, without hesitation, came to the conclusion that he could not, if his remedy at law was as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity."

We submit that the complainant, under the circumstances of this case, has no remedy in equity as against the defendant in this District.

Mr. Justice JAMES delivered the opinion of the court.

The parties to this cause have, we think, substantially agreed upon the law of the case; that is to say on the doctrine that if there was no acceptance of the condition introduced in the deed that Ashford as grantee should pay this debt, he was not bound to pay it although it was so specified in the deed.

It is not of any particular interest to go into the details of the testimony, but our conclusion after examining it carefully is:

First. That Dr. Ashford was no party at all to the original negotiation. He had no reason to know and no means of knowing that any such condition was introduced, nor did he even know that a conveyance was made to him by Thompson. Some time afterward he obtained his information from Moses Kelley, his father-in-law, who was indebted to him, and for whom he was security in some matters.

It should be observed here that the only conflict of testimony is that of Mr. Boarman and Dr. Ashford, and that conflict relates to a matter scarcely material. Dr. Ashford is not contradicted by anybody as to the original transaction nor as to the character of his information from Moses Kelly. That information was to this effect: That Kelly told him he had given him some lots (he was not even then informed where the title came from) and gave him to understand that he thereby secured him. Kelly did not definitely state that he had given him these lots in payment, and inasmuch as there was no ascertainment between them at that time of the value of the lots, it is not to be presumed that it was in payment of a definite amount; we must, therefore, assume from this conversation that Kelly was intending merely to secure a liability.

Dr. Ashford paid interest on the encumbrances. It was perfectly natural that he should do just what any person

who seeks to save his security must do    He collected the rents. It was consistent with the idea of security that he should do that also. But we do not find any transaction on his part accepting the condition in the deed to pay the debts secured by prior encumbrance.

Just when he obtained his information that there was a condition is not precisely ascertained. We are of opinion, however, that Mr. Boarman is more likely to be mistaken than Dr. Ashford as to having given him the information in the month of October instead of in the spring of the ensuing year. But on the whole that is not material for we are satisfied that Dr. Ashford did not accept this condition.

The bill does not proceed upon a promise of Dr. Ashford. For if the plaintiff relies upon a distinct promise, the remedy is an action at law. But the bill is carefully drawn on the theory that Dr. Ashford has made a contract with Thompson by which he reserved a part of the consideration, and that the amount so reserved constitutes a trust in his hands for the benefit of the plaintiff. But the evidence is that Ashford had no contract whatever as to what the consideration was to be with Thompson. The fact, therefore, that there was no understanding as to what the price of the property was to be, supports the theory that it was transferred through Kelly's instrumentality by way of security to Dr. Ashford.

The decree below is affirmed.