Argued April 18, affirmed May 1, 1917.

## KNIGHTON *v.* CHAMBERLIN.

### (164 Pac. 703.)

**Mortgages—Assumption of Mortgage Debt—Evidence.**

1. In a suit against C. and H. to foreclose a mortgage on land, conflicting evidence *held* to support a court finding that H. by oral agreement assumed the mortgage.

**Mortgages—Oral Promise to Assume Mortgage—Enforceability.**

2. A verbal promise by grantee to assume and pay a mortgage on land, if clearly established, is valid and enforceable in equity.

**Equity—Mortgage Foreclosure—Sufficiency of Averments to Support Decree.**

3. In a suit to foreclose a mortgage on land sold by the mortgagor, averments of cross-complaint *held* sufficient to uphold decree that H., the purchaser, assumed and agreed to pay mortgage, and became personally liable therefor, and that, in case of deficiency upon sale, plaintiff be required first to enforce demand against H., and that cross-complainant have judgment against H. for any sum which he may be compelled to pay plaintiff.

[As to right of a creditor of vendor to enforce a mortgage assumed by vendee, see note in **Ann. Cas.** 1914C, 499.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 2.    Statement by MR. JUSTICE MOORE.

This is a suit by Lella Knighton against Joseph W. Chamberlin and Rose W. Chamberlin, his mother, L. O. Herrold, and Epsie E. Herrold, his wife, to foreclose a mortgage on lots 11 and 12, in block 74, in North Salem Addition to Salem, Oregon, executed by Mr. Chamberlin to secure a promissory note which he and his mother gave June 21, 1913, to the plaintiff for $500, maturing in two years with 8 per cent interest, payable semi-annually, and providing for the payment of a reasonable sum in addition as attorney's fees if a suit was instituted to collect any part of the note. The complaint is in the usual form, alleges the payment of only three installments of $20 each as interest, and that $75 is a reasonable sum as attorney's fees.

The separate answer of Mr. Chamberlin and his mother admits most of the averments of the complaint and by way of cross-complaint for affirmative relief alleges in substance that about November 26, 1913, he entered into a contract with the defendant Mr. Herrold pursuant to which he conveyed the real property hereinbefore described to the latter, who agreed to assume and pay the mortgage on such premises, and Mr. Chamberlin also deeded a house and lot on Twentieth Street, Salem, Oregon, to the defendant Mrs. Herrold, then Miss Smith, who assumed and agreed to pay a mortgage thereon of $500, and in consideration thereof Mr. Herrold caused to be transferred the tools, machinery, etc., and his interest in a building used for housing motor vehicles and known as the "Salem Auto Garage," then subject to a mortgage of $500, the payment of which Mr. Chamberlin assumed and subsequently discharged; and that Mr. Herrold has failed to keep or perform his part of the agreement, except to pay the installments of interest. The prayer of the answer is that Mr. Herrold be decreed to have assumed and agreed to pay the plaintiff's mortgage; that he thereby became personally liable therefor, while Mr. Chamberlin and his mother are his sureties only; that in case of a deficiency upon a sale of the premises under a decree of foreclosure the plaintiff herein be required first to enforce her demand for such insufficiency against the property of Mr. Herrold before Mr. Chamberlin or his mother be required to pay any part of the same; that the latter have a decree against Mr. Herrold for the recovery of any sums, including costs, etc., that they may be obliged to pay the plaintiff, and for such other and further relief as to the court may seem just and equitable in the premises.

The answer of Mr. and Mrs. Herrold denies the material averments of the cross-complaint and for a defense thereto alleges that in November, 1913, the Salem Auto Garage was a corporation, and that the capital stock therein was then owned by Mr. Herrold, Miss Smith and Jack Melsom; that Mr. Herrold and Mr. Chamberlin entered into an oral agreement whereby such capital stock was transferred to the latter, who as part consideration therefor conveyed his equity only in and to the real property described in the plaintiff's mortgage to Mr. Herrold, and Mr. Chamberlin also conveyed to Miss Smith, now Mrs. Herrold, a like interest in and to the house and lot on Twentieth Street, Salem, Oregon; that at the time such transfers were made Mr. Chamberlin paid to Mr. Herrold the remainder of the consideration for such exchange of equities; and that the contract here set out is the only agreement ever entered into and the one mentioned in the cross-complaint.

These allegations of new matter were controverted by the reply of Mr. Chamberlin and his mother, and the cause being then at issue was tried, resulting in a decree as prayed for in the cross-complaint, except that only $50 was allowed as attorney's fees; and Mr. Herrold appeals.                          AFFIRMED.

For appellant there was a brief over the names of *Mr. James G. Heltzel, Mr. Ernest Blue* and *Mr. Donald W. Miles,* with an oral argument by *Mr. Heltzel.*

For respondents, Joseph Weller Chamberlin and Rose W. Chamberlin, there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

For respondent, Lella Knighton, there was a brief presented by *Messrs. Pogue & Page.*

MR. JUSTICE MOORE delivered the opinion of the court.

The only question involved is whether Mr. Herrold, as a part of the consideration for an exchange of the property transferred, orally agreed to assume and pay the plaintiff's mortgage. The testimony given at the trial shows that Mr. Chamberlin, who had for some time been engaged as an assistant in a surveyor's office, where he had seen deeds prepared for signature and acknowledgment, had no previous experience in drawing such sealed instruments and personally wrote . the conveyances which he executed to Mr. Herrold and to Miss Smith. In each instance he stated in the deed that the premises were free from all encumbrances, except the plaintiff's mortgage for $500, and a mortgage for a like sum on the Twentieth Street house and lot, but he did not declare in either of such instruments that the grantee therein named assumed or agreed to pay the encumbrance mentioned. Mr. Chamberlin on direct examination in referring to Mr. Herrold testified as follows:

"I sold him these lots in controversy and a house and lot in East Salem, and told him there was a mortgage of $500 apiece on them, and he told me there was $400 ($500) against the garage; there was two notes left and the chattel mortgage on record in the courthouse against the tools and apparatus in the garage; and after talking it over he agreed to take these two lots and assume the mortgage, and house and lot and assume that mortgage, and I took over the garage and assumed the indebtedness against the garage. * *

"Q. How did you arrive at the purchase price to be paid for the garage?

"A. We took an invoice, and it amounted to $2,100. I had these lots in North Salem I valued at $1,000, with $500 mortgage; then the house was valued at $1,500,

with $500 mortgage; then I gave Mr. Herrold $100 credit on my books; that made $1,600. He had $2,100 in the garage and $500 indebtedness against it; so we came to amounts of about $1,600.''

On cross-examination this witness was asked:

''Now, isn't it a fact, Mr. Chamberlin, that you nor Mr. Herrold never at any time talked about assuming each other's mortgages?'' He answered: ''No, that is not a fact; as I said before that was a part of the trade.''

Mr. Herrold's testimony corroborates that of Mr. Chamberlin in respect to the inventory of the garage, the value of which was found to be $1,600 after deducting the mortgage.

This witness stated upon oath:

''I was to receive equities in these two pieces of property, and I was to clear the garage of all current indebtedness and was to receive all current bills due the garage at the time of the transfer. * *

''Q. When Mr. Chamberlin acquired the stock of the corporation, and others designated by him, did you require him to assume and agree to pay the mortgage against the property personally?

''A. I made no requirements of any kind; just transferred the stock with the understanding that that $500 mortgage was against the corporation.

''Q. At the time the deal was being talked about, and at the time it was finally closed up, did you assume the mortgages on these respective properties, or either of them?

''A. I did not. * *

''Q. Did you ever tell Mr. Chamberlin that you would assume the mortgage that was against lots 11 and 12 in block 74 of North Salem Addition to Salem, Oregon?

''A. No.

''Q. Did he ever ask you to assume and agree to pay his mortgage?

''A. No, sir.

"Q. Had that provision requiring you to assume and agree to pay that mortgage been put in this deed, Defendant's Exhibit 'A,' would you have accepted the deed?

"A. No, sir, not at all.

"Q. State any other matters connected with this transaction, terms of deed, and so on.

"A. Nothing except we were speaking of equities all the time in the trading, and he was telling me of his equities in the properties, and we went out to see them, these two and another, and at the time I rather doubted the wisdom on my part of taking the lots; I made some investigation and the equities seemed to be overvalued considerably, but I took the lots thinking I would be able to make some kind of a trade in a day or two or a month or two; it was my equity in the garage and his equity in the real estate that I was thinking of in the dealing all the time."

On cross-examination in referring to the encumbrance on the garage Mr. Herrold was asked:

"You had an understanding with Mr. Chamberlin that Chamberlin was to take care of the mortgage?

"A. The trade was made on that basis.

"Q. That Chamberlin was to take care of that mortgage?

"A. It was the consideration of the transfer.

"Q. And you didn't expect any further liability on your part?

"A. I did not."

It is impossible to reconcile the conflicting statements of these interested parties. The trial court having heard their testimony expressly found that Mr. Herrold agreed to assume and pay the plaintiff's mortgage and that Mr. Chamberlin also agreed to assume and pay the encumbrance on the garage. The finding so made is entitled to great weight, and a careful examination of the entire testimony when compared and considered in connection with the inferences

and presumptions deducible therefrom is not deemed sufficient to overturn the conclusion thus reached.

A verbal promise by a grantee of land to assume and pay a mortgage on the premises, if clearly established, is valid and may be enforced in equity: Jones, Mort. (7 ed.), § 750. The averments of the cross-complaint are sufficient to uphold the relief which was granted: *Hough* v. *Porter,* 51 Or. 377 (95 Pac. 732, 98 Pac. 1083, 102 Pac. 728).

In view of all the circumstances attending a transfer of the respective properties as disclosed by the evidence, it is believed a decree should be rendered foreclosing the mortgage as prayed for in the complaint, and also that the defendants Joseph Weller Chamberlin and Rose W. Chamberlin be awarded a recovery over against the defendant L. O. Herrold for any part of the sum they may be compelled to pay as a deficiency; and it is so ordered.          AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.