OTHAR McFARLAND, Administrator of Estate of ORA A. McFARLAND, Appellant, v. EDMUND P. MELSON and JOHN G. HOYT.—20 S. W. (2d) 63.

Division One, September 13, 1929.

978

*O. V. Seed* and *Ward & Reeves* for appellant.

*Smith & Zimmerman* for respondents.

ELLISON, C.—Action at law to recover about $9,300 principal, with interest and attorney's fee in addition, balance due on certain mortgage notes, the foreclosure sale under the two deeds of trust securing them having fallen that much short of paying the full mortgage debt. The plaintiff's intestate was the payee and mortgagee and T. V. Schoonover and wife were the makers and mortgagors.

About a week after the execution of the notes and deeds of trust they sold the mortgaged land to the defendants, Messrs. Melson and Hoyt, by general warranty deed expressly reciting the conveyance was *subject* to the deeds of trust, but the plaintiff contends that at the time of the sale and as part consideration therefor the defendants *orally* agreed to assume and pay the encumbrance. Schoonover and wife were not joined as defendants in the suit.

The case was taken to Scott County on change of venue and there tried to the court, a jury being waived. From a judgment for the defendants the plaintiff has appealed. The principal assignments of error are that there was no substantial evidence to support the finding and judgment; and that the court erred in refusing certain requested declarations of law stating the alleged oral agreement need not be express and might be implied from facts and circumstances in evidence.

The facts, briefly, are that on April 19, 1920, Schoonover bought a quarter section of land in Pemiscot County from the intestate, Ora A. McFarland, for $90 per acre, making the purchase price $14,400. Of this $3200 was paid in cash and the balance of $11,200 by the notes and deeds of trust involved in this suit. He sold and deeded the land to respondents on April 26, 1920. Thereafter, in November, 1923, we will anticipate by saying, the deeds of trust were foreclosed by the trustee under the power of sale contained therein and the land brought about $1900, net, which amount was credited on the notes, leaving the balance sued for. In 1920 land prices in southeast Missouri were high and times were good; later depression set in.

There is not much conflict in the testimony with respect to the oral negotiations culminating in the execution of the deed. Practically all the witnesses on both sides say Schoonover told the respondents about the $11,200 mortgage debt he had charged on the land, and that he informed them he wanted the $3200 cash he had paid to McFarland and $1600 profit for his equity or for his bargain. Appellant used one of the respondents as his own witness, and the latter said Schoonover used the word "equity." Schoonover, himself, who testified for respondents, says he may have done so, but he thinks he said "give me my money back and $1600 and you can have it, or my bargain, or something to that effect." Every witness, unless it be Schoonover, said it was the equity that was sold; but most of them agreed that Schoonover also stated in the conversation he wanted $1600 profit, or for his bargain, and the $3200 cash he had paid out. making $4800 the cash price of the interest sold, with the deeds of trust left standing on the land. The question as to whether the grantees should assume the deeds of trust never was mentioned, though Schoonover testified that when he sold the land he did not expect

to pay the notes. He said he thought Hoyt and Melson would trade the land to somebody else and let them do the paying, and he added "I never heard tell of a fellow paying a note off, paying a farm out."

The consideration expressed and receipted for in the deed from Schoonover to Hoyt and Melson was $4800, the amount of cash actually paid; but $16 in revenue stamps were put on the deed, as if the fee-simple title were passing at a valuation of $16,000—and it will be remembered this was the basis on which the cash sale price was figured. On this point Mr. Schoonover testified he did not know why that amount of stamps was used, but he thought the scrivener, Mr. McKay, said it would take that much. He continued: "I don't know anything about the revenue stamps, only I put them on there, because the law required putting some on and they told me that's what it took. . . . We left that deed with Mr. McKay at the bank and Mr. McKay is the one that got the stamps; I paid for them. I got a letter from Mr. Hankins, Mr. Hoyt's secretary, reminding me they had put $16 worth of stamps on this deed, and I sent them the $16; no, I don't know whether I paid Hoyt or McKay, but I got a letter from Mr. Hankins saying it taken $8 more for revenue stamps. Q. 'You put the $16 on because the purchase price was $16,000—one dollar a thousand?' A. 'Well, that's what I think; that's all I knew about it at that time; the law said put them on and that's the reason we put them on. I was covering the indebtedness in this. The $4800 cash and the $11,200 deed of trust against the land made up the $16,000, and I was putting stamps on it to cover the entire amount.'"

As to the evidence bearing on the acts and conduct of the parties after the sale of the land. It is undisputed that Hoyt and Melson went into possession through croppers or tenants, that they collected the rents, made some improvements, paid taxes and paid the first year's interest on all the notes on April 26, 1921. In this connection Mr. Schoonover testified that when this interest was coming due McFarland wrote him about it and he, in turn, wrote Melson. Melson replied stating he would write McFarland; that they were capable of taking care of their own business, and that he (Schoonover) needn't worry about it. It was also shown, by respondents, that about this same time McFarland wrote the secretary of the respondent Hoyt giving notice of the approaching maturity of the interest payment for the first year, and saying, "I do not know just who is the paymaster, but presume it will be handled through your office." A little later he wrote the respondent Melson stating, "I take it for granted that you do not intend to protect your equity," and declaring that he would turn the deed of trust over to the trustee for foreclosure.

After the second year's interest became delinquent the mortgagee, McFarland, and the respondents executed a written extension agreement reciting that whereas the respondents had paid certain past due

taxes on the land and for certain fire insurance, therefore in consideration of said payments, and respondents' agreement to pay the 1922 taxes by the end of that year, the time for payment of the 1922 interest and one of the $800 notes secured was extended one year.

The appellant administrator testified that in the summer of 1923, before the foreclosure, he and his attorney had a conversation with Melson in an effort to effect a collection of the notes, the mortgagee having died in the meantime. He says Melson stated he didn't know just what they would do about it, that he and Hoyt had disagreed and dissolved partnership. Melson asked what discount would be allowed if he paid off the notes (they were not all due). The appellant further says he notified the respondents of the foreclosure by sending each a copy of the trustee's publication notice of foreclosure sale by registered mail.

This states the evidence, we think, in the light most favorable to the appellant.

The law is settled in Missouri and generally over the country that when a grantee takes title to land by deed reciting the conveyance is *subject* to certain incumbrances, the deed, itself, imposes on him no personal liability with respect thereto. [19 R. C. L. sec. 151, p. 380; 41 C. J. section 755, p. 715, sec. 757, p. 717, sec. 767, p. 721; Hall v. Morgan, 79 Mo. 47, 52; Fuchs v. Leahy (Mo.), 9 S. W. (2d) 897, 900-1; Walker v. Goodsill, 54 Mo. App. 631, 634; State Ins. Co. v. Irwin, 67 Mo. App. 90, 94; Natl. Home B. & L. Assn. v. Scudder-Gale Grocer Co., 82 Mo. App. 245, 251-2; Keifer v. Shackett, 85 Mo. App. 449, 452; Van Meter v. Poole, 130 Mo. App. 433, 437, 110 S. W. 5, 6; Fuller v. DeVolld, 144 Mo. App. 93, 96, 128 S. W. 1011, 1012; Hiemenz v. Starck (Mo. App.), 198 S. W. 447; Mesker v. Harper Real Estate & Inv. Co. (Mo. App.), 221 S. W. 407, 409; Casner v. Heaton (Mo. App.), 237 S. W. 1042, 1043.]

But while this is so, the weight of authority in this and most other states holds that as against an unequivocal recital of the above nature in a deed, the fact may nevertheless be established by *parol* testimony that the grantee assumed and agreed to pay the incumbrance—a wholly different thing; and the rule applies to cases such as this, where the issue arises between the grantee and one not a party to the deed—the mortgagee or lienholder. The theories on which such latitude is allowed are not always in accord, even in the same jurisdiction.

In some decisions the doctrine is put on the ground that a stranger to a written instrument is not forbidden to dispute its terms, even though he claims the benefit of the relation created thereby, and that he may show by extraneous evidence the real agreement between the parties. Through this course of reasoning it appears to be the law

in some states that a purchaser of premises subject to a mortgage is powerless by the insertion in his deed of any form of words, however stringent and binding, to forestall a possible subsequent claim of the lienholder that he orally agreed to pay the entire mortgage debt as a consideration for the conveyance. [50 A. L. R. 1226, note.] One of the cases along this line is Burnham v. Dorr, 72 Me. 198. It is cited and followed without discussion in Bensieck v. Cook, 110 Mo. 173, 186, 19 S. W. 642, 645.

Another theory advanced by many cases is that an agreement to assume is an independent contract, and that parol proof thereof is merely explanatory of the consideration and does not contradict or impair the effectiveness of the deed as a conveyance, though title is expressly passed subject to the incumbrance, or even when it is silent on the subject and contains a covenant of warranty against incumbrances. All the Missouri cases, however, do not wholeheartedly accept this view. [Klein v. Isaacs, 8 Mo. App. 568, memo.; Brown v. Morgan, 56 Mo. App. 382, 386; Laclede Laundry Co. v. Freudenstein, 179 Mo. App. 175, 161 S. W. 593.]

Again, some decisions say the execution of the deed and delivery of possession by the grantor constitute performance on one side such as takes the alleged oral agreement to assume out of the Statute of Frauds and opens the way for proof thereof. [Murray v. Smith, 1 Duer (N. Y.), 412, 429; Ely v. McKnight, 30 How. Pr. (N. Y.) 97; Remington v. Palmer, 62 N. Y. 31.] The Ely case is followed in Nelson v. Brown, 140 Mo. 580, 588, 41 S. W. 960, 962.

It is not our purpose to inquire into the correctness of these several theories, or to discuss their relative merits and weaknesses. We refer to them simply to show that in any view of the matter it must be and is recognized that the question involves going outside the deed and enforcing an agreement which is at least in some measure at variance with the terms of the instrument as a contract if not as an operative conveyance.

This being so, it has been declared, and we think wisely, that the evidence importing the alleged undertaking should be clear and convincing. In Hall v. Morgan, supra, 79 Mo. l. c. 52, this court said the agreement must be express, and the same is ruled in State Ins. Co. v. Irwin, supra, 67 Mo. App. l. c. 94. In Natl. Home B. & L. Assn. v. Scudder-Gale Grocer Co., supra, 82 Mo. App. l. c. 252, where the deed required the grantee to pay taxes and recited the conveyance was *subject* to a certain mortgage, the court said this was strong and persuasive evidence that the mortgage was not assumed. In Keifer v. Shackett, supra, 85 Mo. App. l. c. 452, the court held the agreement to assume "must be clearly established, either by a recitation in the deed accepted at the time or by a contemporaneous obligation then entered into." In

Hefferman v. Weir, 99 Mo. App. 301, 304, 72 S. W. 1085, it is stated a verbal promise of such assumption is valid, but must be established by clear and cogent evidence and cannot be implied by inference. Some of these authorities are cited approvingly in more recent decisions without reaffirmance of the particular proposition just mentioned, but they have never been overruled on the point and they state the law as it ought to be and is elsewhere. [41 C. J. sec. 778, p. 730; 19 R. C. L. sec. 150, p. 380; 2 Jones on Mortgages (8 Ed.) sec. 937, p. 300; 3 ibid, secs. 2211, 2212, pp. 727, 728; Collins v. Rowe (N. Y. Supr.), 1 Abbots' New Cases, 97; Knighton v. Chamberlin, 84 Ore. 153, 159, 164 Pac. 703; Chaffee v. Hawkins, 89 Wash. 130, 136, 154 Pac. 143; Woodburn v. Harvey, 107 Kan. 57, 62, 190 Pac. 620; Holland v. Belcher Land & Mort. Co. (Tex. Civ. App.), 248 S. W. 803, 806.]

The last statement above perhaps should be qualified some. The Hall and the State Ins. Co. cases first cited in the preceding paragraph say the agreement to assume must be express, and the Hefferman case last cited says the agreement cannot be implied by inference. This is too broad. The general rule is that no particular form of words is necessary to constitute a contract of assumption, and that an agreement to assume may arise by implication. [19 R. C. L. sec. 151, p. 380; 41 C. J., sec. 769, p. 723.] But it is true the evidence to establish the contract must be clear and convincing; and that it must be made to appear the parties agreed—that there was a meeting of minds—on the proposition that the grantee should make the mortgage debt his own, or else the circumstances proven must be such as to estop the grantee from denying the liability, in which case the law implies a promise on his part.

There is an apparent holding in Landau v. Cottrill, 159 Mo. 308, 318, 320, 60 S. W. 64, 66, that if a deed is expressly made subject to an incumbrance and the evidence shows the amount thereof was subtracted from the estimated worth of the land in computing the value of the equity of redemption, the encumbrance becomes part of the purchase price and the grantee is bound to pay it. The case is cited as authority (though not, perhaps, to the full extent of the holding supra) in Gilmer v. Powell (Mo. App.), 256 S. W. 124, and Reed v. Steward (Mo.), 276 S. W. 12; and all three of these decisions are relied on by the appellant here.

We do not agree that the foregoing is clear and convincing evidence of an agreement to assume, or that such an agreement should be implied therefrom. In fact, it is no evidence at all (Fuller v. DeVolld, supra, 144 Mo. App. l. c. 96, 128 S. W. l. c. 1012; Hiemenz v. Starck, supra, 198 S. W. l. c. 449); for in every ordinary purchase of an equity the process necessarily involved in ascertaining its value

is to deduct the amount of the encumbrance from the worth of the interest covered. If the real intention and agreement of the parties is that the full value of the *unincumbered* interest shall be the purchase price paid and the amount of the encumbrance is allowed as a credit, then the purchase money represented thereby really belongs to the grantor and the grantee becomes personally liable, the law implying his promise to pay because the transaction in effect leaves in his hands a fund for that purpose; but not so, where he merely buys and pays for the equity of redemption even though he use the same figures in his computations. [41 C. J. sec. 770, p. 724.]

It is further contended by appellant that an agreement on the part of respondents to assume the deeds of trust must be implied from the testimony that Schoonover was paid $1600 "profit" or for his "bargain." Definitions of the two words are quoted showing the former means advance in price beyond the cost of purchase; and the latter, trade, contract or agreement. Appellant asks how Schoonover could gain a profit if he failed to get back his original investment. This argument would have weight if it were not for the other facts in evidence. We must look at the situation as it existed at the time. Schoonover owned only the equity of redemption. He thought of his investment as the $3200 cash he had paid and spoke of it that way. He told the respondents he wanted *that* back and $1600 profit. The deeds of trust were to be left standing. Nothing was said about their assumption. The land was then of high value, as is shown by the fact that the respondents were paying $4800 for the equity. Doubtless it did not occur to any of the parties that the security might get to be worth less than the amount of the mortgage debt. Considering the conversation altogether there is nothing in it indicating Schoonover intended to impose on respondents a personal liability for the payment of the mortgage or that they so understood. In taking over Schoonover's "bargain" they simply bought his equity at the price he paid for it and gave him $1600 more.

The next contention is that the acts of the respondents in paying an installment of interest on the mortgage notes and in procuring the extension agreement are evidence of a contract to assume the debt in the first instance. On this proposition the following is quoted from 27 Cyc. 1348: "The fact that the grantee paid interest or a part of the principal of the debt, or negotiated with the mortgagee in regard to its payment, is pertinent." This statement is repeated, substantially, in 41 Corpus Juris, sec. 779, page 730. The cases cited as supporting the text are McKay v. Ward, 20 Utah, 149, 162, 57 Pac. 1024, 46 L. R. A. 623; Ludlum v. Pinckard, 304 Ill. 449, 453, 136 N. E. 725; Kenney v. Streeter, 88 Ark. 406, 410, 114 S. W. 923.

But an examination of these decisions shows that in the first two the deed contained an assumption clause and the question at issue was whether or not the grantee was bound thereby. In the Illinois case the court said evidence of a partial payment on the encumbrance was competent because it established actual knowledge on the part of the grantee of the existence of the encumbrance and negatived any repudiation of the clause. In the Arkansas case a father for a consideration of one dollar quitclaimed mortgaged land to his son. The deed was silent as to the mortgage. In a suit to foreclose and for a deficiency judgment the complaint alleged the real consideration for the conveyance was the assumption of the mortgage by the son and his answer did not deny it. The court held the allegation must therefore be taken as true, and further stated certain letters written by the father and son to the lien-holder, at least one of which practically said the son had stepped into the father's shoes with reference to the land and mortgage, were evidence of an agreement to assume.

Without going further into the refinements of these rulings, it is apparent the cases are distinguishable on their facts. The question in the instant controversy is whether the respondents only bought subject to the two deeds of trust or whether they assumed them. In either event it was natural for them to want to protect their investment in the equity of redemption and we cannot see that the payment of interest (much under the value of the security) or seeking indulgence from the mortgagee has any tendency whatever to show they did *not* buy merely the equity of redemption. The better reasoned authorities sustain this view. [41 C. J. sec. 779, p. 731; Frase v. Lee, 152 Mo. App. 562, 566, 134 S. W. 10, 11; Citizens Bank of Springfield v. Thomas, 214 Mo. App. 581, 592, 264 S. W. 86, 88; Keller v. Ashford, 14 D. C. 444, 455-6; Fitzgerald v. Flannagan (Iowa), 125 N. W. 995, 997; Feigenbaum v. Hizsnay, 175 N. Y. Supp. 223, 225; Elliott v. Sackett, 108 U. S. 132, 142, 2 Sup. Ct. Rep. 375, 27 L. Ed. 678.]

The appellant further contends that by paying the interest and asking for more time the respondents betrayed the appellant's intestate into granting the extension without the knowledge or consent of Schoonover, the maker, and that this had the effect of releasing him on the theory that he became a surety and the respondents principals when they purchased the land. From this it is argued the respondents are estopped to deny the assumption. The notes provided "the makers . . . consent that the time of payment may be extended without notice;" but even so, under Bank of Senath v. Douglass, 178 Mo. App. 664, 687-8, 161 S. W. 601, 607, perhaps Schoonover would have been released if respondents had *assumed* the debt in the beginning. If, however, they only bought subject to the mortgage (and we think the evidence so shows) Schoon-

over did not become a surety and the argument fails. Where the extension is granted to a mere purchaser subject to the mortgage, it is said in 19 Ruling Case Law, sec. 155, page 383, the better rule is that the mortgagor or grantor is released only to the extent of the value of the land; and in this case the appellant has had the benefit of that by his foreclosure.

Furthermore there are no elements of estoppel in the transaction. When the respondents paid the interest they did so not in response to a demand upon them as obligors but in compliance with the intestate's letter expressly stating he did not know who the paymaster was. His second letter clearly shows he was appealing to the respondents only on the ground that they should protect their equity. The extension agreement contains no promise on the part of the respondents to pay the debt and the evidence does not show they made any representations of that nature to the intestate at any time.

And when Schoonover referred to Melson the deceased's letter stating the first year's interest would soon be due, and Melson replied to Schoonover saying he would write the deceased and telling Schoonover not to worry, that they (Melson and Hoyt) were capable of taking care of their own business—all that had to do simply with the payment of the first year's interest and is not substantial evidence, so far as we can see, that Melson and Hoyt had assumed the whole debt when they bought the land. Indeed, the inference may be drawn from it quite as well that Melson and Hoyt had an option as to whether they would pay the interest or not; otherwise why should they tell Schoonover not to worry, and that they were capable of looking after their own business.

A few other matters of evidence are mentioned in the briefs, but we shall not extend the opinion by discussing them. It is our conclusion from the whole record that, measured by the standards which the law imposes in cases of this character, the trial court was clearly right in deciding the case for the respondents, and that there was no substantial evidence to support a judgment for the appellant. This being so, the trial court's error in refusing the appellant's declarations of law numbered 5 and 6, declaring the assumption agreement need not be express and could be implied from the facts and circumstances in evidence, was not reversible, and the judgment is affirmed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.