40 523
73a 630
74a 467

STEPHEN M. EDGELL, Respondent, *v.* CHARLES L. TUCKER, Interpleader, and THOMAS A. BUCKLAND Garnishee, Appellant.

*Contract—Debt—Assignment—Novation.*—A. being indebted to B. and C. being indebted to A., it was agreed between A., B. and C. that C. should pay B. the amount he owed A., unless upon going to his office he should find that he had been summoned as a garnishee of A. After A. had left, C. requested B. to procure A.'s written order of payment. C. proceeded to his office and found that no process of garnishment had been served, but in half an hour after C. was summoned as garnishee of A., and half an hour after B. presented to C. the written order of A. Upon an interpleader by B. in the garnishment suit—*Held*, that, by the agreement between A., B. and C., C. became indebted to B., and that the debt to A. was discharged, subject only to the condition that the debt had not been attached, and, as the condition had been performed and the debt had not been attached, that the contract between the parties was complete and the liability of C. fixed as the debtor of B.; and that the request of C. that B. should procure A.'s written order, A. not being present did not affect the assignment of the debt, and that the subsequent service of the garnishment could not impair the rights of B.

*Appeal from St. Louis Circuit Court.*

*Krum, Decker & Krum,* for appellant.

The third instruction declared that a novation to be good against attaching creditors must be complete, absolute, unconditional, and mutually binding upon all the parties. The idea that a novation cannot be conditional is erroneous. The doctrine of novation was obtained from the civil law. Under the civil law, an engagement could be annulled or diminished by the substitution of a second engagement in its place; this constituted a *novation*—a substitution of a new for an old debt. The old was extinguished for the new debt. This could be accomplished in two ways : First, without a change of the persons, by changing only the value of the obligation; and secondly, by a change of the debtor, and this whether the first obligation subsisted, the second debtor charging himself therewith instead of the former who was discharged, or whether the new debtor made a new obligation—Heaton v. Angier, 7 N. H. 397 ; Crowfoot v. Gurney, 9 Bing. 372 ; Hyde et al. v. Borreau, 16 Pet. 169, 180.

In equity, however, an assignment of a chose in action is as good and as valid as the sale of a chattel. In this State, choses in action are assignable and transferable like chattels, the only qualification being that the debtor shall have notice of the assignment; his assent to the assignment is entirely unnecessary, and it is not essential that the transfer should be in writing—Tibbetts v. George, 5 Ad. & El. 115 ; *Ex parte* Spruitt, 3 Swanst. 392 ; Boecka v. Nuella, 28 Mo. 180. It is not necessary that the notice should be by any particular instrument, or in any particular form—Ashby v. Winston, 34 Mo. 315 ; Burn v. Carvalho, 4 Myl. & C. § 702.

It is immaterial also that the precise amount of money in Buckland's hands was unknown when he was ordered to pay to the appellant—Clark v. Mauran, 3 Paige, 373 ; Crowfoot v. Gurney, 9 Bing. 372.

This being a mere race between creditors, the doctrine *qui prior est tempore, potior est jure,* applies. Tucker had a

complete equitable title to the funds before the attachment, a title which did not depend upon the assent of Buckland. It is sufficient that Buckland had notice of the transfer, which is not denied. The title of Tucker, by the direction and assignment of Smith & Bullens, was such that he could have maintained an action against Buckland, and would have recovered without having shown the latter's assent— Kimball v. Donald, 20 Mo. 580; Tieman v. Jackson, 5 Pet. 580, 595.

*Glover & Shepley*, and *Currier*, for respondent.

The facts in the case do not show any novation, but, on the contrary, show conclusively that there was no novation, for—

I. in order to be a novation the transaction must be instant—absolute—a present change by which a debt is lifted from the shoulders of one party and placed upon those of the other—1 Pars. on Cont. 217–18; Heaton v. Angier, 7 N. H. 397. Here there was no lifting of the debt; that is admitted on all hands. It was in the beginning connected with the condition imposed, that he (Buckland) would pay Tucker if, when he got to his mill, he did not find he had been garnished. There was no idea in the minds of either of the parties at that time, that there was anything said or done that was *then* in any way operative in any way to change the relation of the parties.

II. In order to be operative it must be upon no contingency—Butterfield v. Hartshorn, 9 N. H. 345.

The idea of novation under our law is that there must be a present accord and satisfaction. If that is not done, there is no consideration for the promise, and the party making it can revoke the promise at his pleasure. There has nothing been done that binds him in any way; it all rests upon a *verbal conditional promise* without consideration. If Buckland had, before he reached his mill, died on the road, then there had been nothing done of any binding obligation upon any one. No authority can be found in any decision at com-

mon law that a conditional promise can be maintained as a novation. It has sometimes been sustained when there was a present interest transferred, but the amount was uncertain; or, rather, such cases as 9 Bing. 372, and 3 B. & C. 842, have been supposed to hold such a doctrine, though those decisions depend upon different principles.

III. It must have operated to instantly release Smith & Bullens from the debt they owed Tucker—Caxon v. Chadley, 3 Barn. & C. 591; Butterfield v. Hartshorn, 7 N. H. 345.

Unless at the time Buckland had contracted a new debt of his own while they (the three parties) were together, the transaction is simply an agreement conditional to pay the debt of another, and therefore within the statute of frauds.

There was no equitable assignment of the debt by Smith & Bullens to Tucker; for, 1. It is purely verbal, and unless it is such a transaction as makes it a novation, then there is no assignment, and cannot be, for there is no consideration—Kimball v. Donald, 20 Mo. 577, affirmed in Ford v. Angelrodt, 37 Mo. 57. 2. There was no release of the debt due by Smith & Bullens to Tucker.

WAGNER, Judge, delivered the opinion of the court.

Stephen M. Edgell sued the firm of Smith & Bullens by attachment, and Buckland was summoned as garnishee. In his answer to interrogatories filed, Buckland admitted that he had in his hands the sum of $2,102.21, which he owed Smith & Bullens for the purchase of wheat, on the day of the service of the garnishment, but stated that before he received notice of the garnishment the debt was assigned and transferred to Chas. L. Tucker, and that therefore he owed Smith & Bullens nothing. The facts shown upon the trial are, briefly, as follows:

On the 13th day of December, 1864, Buckland and Smith, of the firm of Smith & Bullens, met upon the street in the city of St. Louis, and Smith requested of Buckland a check for the balance for which he was indebted to the firm. The parties not recollecting the precise amount of the indebted-

ness, the demand was made for $2,000. At the time Tucker came up, and Smith, at the instance of Tucker, requested Buckland to pay the balance in his hands to him. Buckland told Smith, in the presence of Tucker, he would do so, if, when he got to his office, he did not find a notice of attachment, which would hold the money. Smith then left the party, and Buckland told Tucker that he had better get a written order from Smith & Bullens on him for the money in his hands, as he did not want to pay except on a written order from them. Tucker said he would see them, and the two parted. Buckland proceeded to his office, and on his arrival there he found no legal process had been left, but in about a half an hour the sheriff garnished him as a debtor of Smith & Bullens, and in about one hour thereafter Tucker presented to him a written order of S. & B., requesting him to pay Tucker the amount in his hands due and owing them. It is conceded that Smith & Bullens owed Tucker about $2,800, a sum considerably in excess of the amount which Buckland was indebted to them. By order of the court, Tucker was brought in to interplead, and the real contest is, whether the attaching creditor or Tucker is entitled to the money which has been permitted to lie in Buckland's possession, awaiting the final determination of a court of competent jurisdiction. The cause was tried before the court without the intervention of a jury, and judgment was given for the plaintiff, the attaching creditor.

It is insisted here for the appellant, that the declarations of law given by the court are erroneous and inconsistent with themselves, and that, for this reason, the judgment should be reversed. But the only question is the true interpretation of the agreement entered into between Smith, Buckland and Tucker, and if this is arrived at, it is decisive of the case, and the instructions need not be noticed. There is no dispute about facts, and the controversy is exclusively one of law. It is strongly urged that when Smith requested Buckland to pay the debt to Tucker, and Buckland assented thereto, although he coupled the assent with the condition

that if there was no notice of attachment when he reached his office, that this amounted to a novation, and operated to make Buckland the debtor of Tucker instead of Smith & Bullens; whilst on the other hand it is asserted that a novation to be good against subsequent attaching creditors, must be complete, absolute, unconditional and mutally binding on all three parties, and not depend on any condition or, contingency. The term novation is borrowed from the civil law, and until a comparatively late period has been little used in our law. It is introducing new parties to a transaction by substitution, as where a debtor is discharged from his liability to his original creditor by contracting a new obligation in favor of a new creditor, by the order of his original creditor. Professor Parsons in his work on contracts gives this illustration: "Thus A. owes B. one thousand dollars; B. owes C. the same sum, and, at the request of B., orders A. to pay that sum, when it shall fall due, to C. To this A. consents, and B. discharges A. from all obligation to him. A. thus contracts a new obligation to C., and his original obligation to B. is at an end"—1 Pars. on Cont. 217. It will be seen here is a new contract formed and a former contract dissolved, and the consideration attaches to the whole transaction. To give full and complete legal efficacy to the new contract, the original liabilities must be wholly extinguished. For unless the former debt is discharged, there is no consideration to support the latter promise, and nothing can spring out of it to maintain an action. Its validity rests upon a present transference of a legal right, by which the debt is entirely extinguished as regards one party and absolutely vested in the third party at his request. To produce this result there must be a mutual concurrence and assent in all the parties at the same time. Buller, J., in Tatlock v. Harris, 3 Term, R. 174, puts this case: "Suppose A. owes B. £100, and B. owes C. £100, and the three meet, and it is agreed between them that A. shall pay C. the £100, B.'s debt is extinguished, and C. may recover that sum against A." The case cited from New Hamp-

shire (Heaton v. Angier) is illustrative of the same principle and to the same point. But, will the annexation of a condition to the agreement defeat its validity, though the condition be subsequently performed ? Pothier, in his work on Obligations, discusses this question at large, and he says that when there is a failure in the accomplishment of the condition there can be no novation, because there is no original debt to which the new one can be substituted. Also, if the conditional debt, of which it is intended to make a novation, by a new agreement, is a specific thing, which has been destroyed or perishes before the condition is accomplished, there will be no novation even if the condition should exist ; for, since the accomplishment of the condition cannot confirm a debt of a thing which has no existence, there is no original debt to which the new one can be substituted. And, on the other hand, if the first debt does not depend on any condition, but the second engagement, intended as a novation, is conditional, the novation can only take effect by the accomplishment of the condition of the new engagement before the debt is extinct. Therefore a novation will be prevented from taking place, not only upon failure of the condition, but also upon the extinction of the original debt before the condition is accomplished. But a term for payment is said to be different from a condition. The debt exists though the term of credit is not expired ; therefore, a novation may be made of a debt, payable at a future day, by a pure and simple engagement, or of a pure and simple engagement by another engagement allowing a term of credit ;. and in either case, the novation takes effect from the first, without waiting for the expiration of the term—See 1 Poth. on Oblig. (by Evans) 382. This principle has been frequently acted upon both in the courts of common law and in chancery.

The agreement between Smith, Buckland and Tucker was complete, only conditioned that if, when Buckland went to his office, he should find legal process there which would hold the money, he should not be required to pay. It is fair to

presume that Smith & Bullens were in failing circumstances, and Buckland was apprehensive that some action had already been taken which would make him liable. But, if, when he reached his office, this apprehension was not realized, the condition was performed, the engagement took effect, and from that instant he become the debtor of Tucker. The subsequent understanding that a written order should be procured, in nowise altered or affected the contract previously entered into between all three of the parties. Smith was not privy to it, and it was suggested by Buckland, out of abundant caution, as furnishing better and more convenient evidence of the transaction. There is nothing wrong or inequitable in the arrangement. The firm of S. & B. were indebted to both Tucker and the attaching creditor, and while they possessed free and unrestrained control over their own assets they had the right to pay any one of their creditors in preference to another, and if the attaching creditor was behind in point of time, it was his misfortune. This case is not like Kimball v. Donald, 20 Mo. 577, and which was followed in Ford v. Angelrodt. The only point there, was whether a bill of exchange drawn by a merchant on his factor, though not accepted, amounted · to an equitable assignment of the funds. The court held that it did not, and at the very outset of the opinion the judge places it on the ground that it was a bill of exchange, and not a mere order to pay over a particular fund. In law, in order to constitute an assignment of a debt or a novation, so as to enable a transferee to bring an action in his own name, the assent of the debtor to the transfer is essential. In equity the rule has always been different, and no promise by the debtor is necessary to enable the assignee to sue in his own name. The rule in this State, is now fixed upon the doctrine prevailing in courts of equity. As instructive on this question, we will cite two cases having a direct bearing on the subject in controversy, one at common law, the other in chancery. In the case of Crowfoot v. Gurney, 9 Bing. 372, one Streather being indebted to Isaac Solly & Sons, addressed a letter to

Gurney, who was his debtor, requesting Gurney to pay to Solly & Sons whatever balance might be due him. This order was forwarded to Gurney by Solly & Sons, and Gurney consented to pay the debt to them as soon as the amount was ascertained. After the amount was ascertained, but before the money was paid, Streather becomes bankrupt, and his effects all pass into the hands of assignees, who claimed the money. It was held that notwithstanding the bankruptcy of Streather, Solly & Sons might sue and recover of Gurney the amount of the debt; Tindal, C. J., after referring to the facts, says, "these circumstances amount to an equitable assignment of the debt due from Gurney to Streather, for Solly might have gone into a court of equity to compel a formal assignment, and no answer could have been given to such an application." In Clark v. Mauran, 3 Paige Ch. 373, Hodges, a merchant, residing at Providence, Rhode Island, was indebted to Mauran, who was in business in New York. Upon being applied to by Mauran for payment, Hodges informed him that he ordered the balance of his funds in the West Indies to be forwarded to him, and directed him to place those funds to his credit, on account, when received. The agents of Hodges in the West Indies shipped the funds, consisting of a quantity of doubloons on board of a general ship consigned to Mauran at New York, and forwarded to him a bill of lading, in which bill the doubloons were stated to be for the account and at the risk of Hodges. Previous to the arrival of the ship at New York, Hodges failed and assigned all his property to trustees, for the benefit of certain other creditors, and upon the arrival of the vessel at New York, both Mauran and the assignees claimed the doubloons. On a bill of interpleader filed by the master of the ship, Walworth, Chancellor, held that Mauran had obtained a specific lien upon the doubloons for the payment of his debt, which lien was not affected by the general assignment of Hodges for the benefit of other creditors.

When the agreement or contract was made between the parties, no lien had attached on the money in the hands of

Buckland, and there was nothing to prohibit Smith & Bullens from disposing of it. The only qualification that was annexed to the contract in reference to notice of attachment was destroyed and annulled, when Buckland found, on his arrival at his office, that no such notice was there. From that period, then, the transfer must be considered unconditional and absolute, and the subsequent service of garnishment could not impair the rights of Tucker.

The judgment must be reversed and the cause remanded. The other judges concur.