[No. 11385.   Department Two.   February 6, 1914.]

ARTHUR S. BIMROSE et al., *Appellants,* v. W. H. MATTHEWS

et al., *Respondents.*[1]

VENDOR AND PURCHASER — CONTRACTS — ASSIGNMENT BY VENDOR— LIABILITY OF ASSIGNEE—DEFECTS IN TITLE. The assignees of vendors under an executory contract of sale are not bound to make the vendors' title good unless they have expressly agreed to do so; and they do not assume the vendors' obligation to convey a perfect title, where the vendors had made their warranty deed to the vendee and put it in escrow, and upon assigning the contract (in order to convey title in case of the vendee's default) made a general warranty deed to the assignees, who at the same time made to the vendee a special warranty against incumbrances arising by, through or under them.

BANKRUPTCY—DISCHARGE OF HUSBAND—LIABILITY OF WIFE—COMMUNITY DEBTS. A discharge in bankruptcy of a husband from the obligation of a community debt also discharges the wife; as her separate property is not subject to the community debts or the separate debts of the husband.

[1]Reported in 138 Pac. 319.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 22, 1913, upon findings in favor of the defendants, dismissing an action for specific performance. Affirmed.

*R. M. Webster* and *Fred M. Williams,* for appellants.

*John M. Gleeson* and *A. G. Gray,* for respondents.

MOUNT, J.—The plaintiffs brought this action to enforce specific performance of a written contract to convey real estate, or, in the alternative, to require the defendants to pay certain lien claims which were established against the property. Upon a trial of the case, the trial court denied the plaintiffs any relief. They have appealed from that judgment.

The facts are as follows: On March 4, 1910, the respondents W. H. Starkey and Alice B. Starkey, his wife, entered into a contract with the appellants by which Mr. and Mrs. Starkey agreed to sell the property in question to the appellant Arthur S. Bimrose, for a consideration of $4,000. This sum was to be paid in installments, $1,000 in cash, $1,400 by assuming a mortgage upon the premises, and $1,600 payable $35 per month, including interest at the rate of eight per cent per annum until the sum of $1,600 was fully paid.

The contract recites:

"That if the party of the second part [Bimrose] shall first make the payments and perform the covenants hereinafter mentioned, on his part to be made and performed, the said parties of the first part [Starkey and wife] do hereby covenant and agree to convey and assure to the said party of the second part, in fee simple, clear of all incumbrance whatever, except one certain mortgage in the sum of $1,400, which said mortgage the said party of the second part assumes and agrees to pay, by a good and sufficient warranty deed, the lot . . ."

The contract also recites:

"It is mutually agreed by and between the parties hereto, that the time of payment shall be the essence of this contract,

and that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

At the time this contract was entered into, Bimrose paid to Starkey and wife the sum of $1,000 in cash, and assumed the payment of the $1,400 mortgage then on the property, and entered into the possession of the premises. At the same time, Starkey and wife executed a warranty deed in terms conveying the property to Bimrose. This deed and the contract of purchase were placed in escrow in the Traders' National Bank of Spokane where monthly installments under the contract were to be paid.

On the 22d day of March, 1910, Starkey and wife assigned the contract to the defendant W. H. Matthews. The assignment was in writing and, omitting the formal parts, reads as follows:

"W. H. Starkey and Alice B. Starkey his wife, of the city and county of Spokane, Washington, parties of the first part, for and in consideration of the sum of one dollar to them in hand paid by W. H. Matthews of Spokane, Washington, party of the second part, have sold, assigned, transferred and set over unto and by these presents do hereby sell, assign, transfer and set over unto the said second party, his heirs and assigns, all right, title and interest in and to a certain contract or agreement of sale, bearing date the 4th day of March, A. D. 1910, by and between the said parties of the first part as first parties and Arthur S. Bimrose as party of the second part, with all and singular the premises therein described, viz:—Lot 3 in block 6 in Cook's Third Addition to Spokane, according to the plat thereof on record in the office of the Auditor of Spokane county, Washington, and all moneys due or to become due under the terms and conditions of said contract or agreement of sale.

"And we hereby appoint the said party of the second part our true and lawful attorney, irrevocable, to collect, prosecute, and in case of default to cancel said contract and withdraw the escrow, and to do all things in relation thereto as fully as we might or could do, but at his own cost and charge.

"And we covenant with said second party that there is

owing on said contract the sum of $1,600 and interest thereon at the rate of 8 per cent per annum from March 4th, 1910, and that we have good right and lawful authority to sell and assign the same in the manner above."

At the time of this assignment and as a part thereof, Starkey and wife executed and delivered to Mr. Matthews a warranty deed conveying the property described to Mr. Matthews. Thereupon Matthews and wife executed a special warranty deed against incumbrances by, through, or under them, conveying the property to Arthur S. Bimrose. These deeds and the assignment were placed in escrow in the Traders' National Bank, with the original contract and deed between Bimrose and Starkey and wife.

At the time of the original contract, Starkey and wife were erecting a dwelling house upon the property in question. The dwelling was not at that time completed and subsequently liens were filed against the property. An action was brought to foreclose these liens. Starkey and wife, Matthews and wife, and Bimrose and wife were all made parties to the action to foreclose the mechanics' liens. A judgment was afterwards entered thereon making these mechanics' liens a first lien against the property.

Afterwards, on November 10, 1910, W. H. Starkey filed in the United States district court a petition for discharge in bankruptcy. Afterwards, on January 26, 1911, he was discharged, and especially from any liability upon this contract.

Mr. Bimrose made the payments as he was required to do under his contract with Starkey. On April 4, 1910, when he paid the installment due at that time, he first learned of the assignment from Starkey to Matthews. He thereafter made the payments according to the terms of his contract until December, 1912, when he paid all the remaining installments upon the contract, together with interest. This money was thereupon turned over by the bank to Matthews. Thereupon this action was brought.

The appellants argue first, that Matthews, by purchasing

the interest of Starkey and wife in the contract, assumed and obligated himself to convey to the appellants the property in question, free and clear from all incumbrances.

The appellants rely upon the case of *Big Bend Land Co. v. Hutchings*, 71 Wash. 345, 128 Pac. 652. That was a case where one Garretson executed a contract whereby he agreed to convey to Smith Hutchings a certain section of land in Grant county, in consideration of the sum of $12,800. Afterwards Garretson conveyed by a deed of general warranty to the Big Bend Land Company, subject to the contract. Hutchings defaulted in his payments, and the Big Bend Land Company brought suit to recover the amount due, with interest. Hutchings defended, apparently upon the ground that a deed from the Big Bend Land Company which recited a consideration of $6,000, would not comply with the contract of Garretson which called for a deed in consideration of $12,000. In deciding that case, we said:

"We do not understand that the promised covenants of Garretson must be by deed passing from Garretson to appellant direct, as implied in the argument of counsel. Such a covenant runs with the land and may be enforced against all of the covenantors in the chain of title beginning with Garretson, either jointly or severally, the only qualification or limitation being that the injured vendee shall have but one recovery."

And further along, we said:

"The assignee of the vendor under an executory contract of sale can take no greater right, and is therefore subject to the same liability as his assignor. 39 Cyc. 1664. The possession of the vendee, or the record of the contract, is notice of the rights of the vendee, and the liability of the vendor. The right of the vendee to strict compliance cannot be limited by any agreement or conveyance between a grantor and a grantee, with notice, pending the performance of the contract. Especially is this so here, for the respondent by taking the assignment of the contract is bound to convey and warrant to the extent of the consideration recited in the con-

tract, which is $12,000. In other words, the vendee is entitled to the deed his contract calls for."

In that case, title passed through the land company, and not directly from Garretson.

Much is made by the appellants of the statement therein made, that "the assignee of the vendor under an executory contract of sale can take no greater right, and is therefore subject to the same liability as his assignor. 39 Cyc. 1664. The possession of the vendee, or the record of the contract, is notice of the rights of the vendee, and the liability of the vendor." That statement, we think, was right in connection with the case in which it was used. It is, however, not entirely supported by the authority cited, for we find the rule stated in 39 Cyc., at page 1663, as follows:

"If the vendor assigns his rights under a contract of sale the assignee acquires only the rights of the vendor."

We have found no authority, and no other authority is cited to us, which states the rule to be that the assignee of a contract is bound in all cases to make the title of the vendor perfect where he has not expressly agreed to do so.

The appellants argue to the effect that, because the contract between Starkey and wife and Bimrose provides that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, and assigns of the respective parties, and because in the assignment from Starkey and wife to Matthews they transfer and set over "all right, title and interest in and to a certain contract or agreement of sale," that thereby Matthews assumed the liability of Starkey to deed the premises by a general warranty deed to the appellants. But it is plain, we think, that Matthews did not undertake so to do. At the time he entered into the contract of assignment with Starkey, Starkey and wife executed to Matthews a general warranty deed. This deed was undoubtedly for the purpose of conveying the property to Matthews in case of the failure of Bimrose and wife to comply with the contract and in case the con-

tract should, for that reason, be forfeited. At the same time, Matthews and wife executed to Bimrose and wife a deed with special covenants against incumbrances arising by, through or under them. This indicates quite clearly that it was not the purpose of Matthews, when he took the assignment of the contract, to relieve Starkey and wife of their obligation to convey a perfect title, or to assume that obligation in their stead. The rule, as between the vendee and his assignee, is as follows:

"It is well settled that the promise of a purchaser of land to take title or pay purchase-money cannot be enforced against his assignee, either in an action for specific performance or in an action for damages, unless there is an agreement to that effect on his part, even though the contract provides that the stipulations or covenants are to bind the heirs, personal representatives, and assigns of the parties; but the land remains liable for the purchase-money and the vendor may call upon the assignee to pay the price or surrender the land, or have it sold to satisfy the debt." 39 Cyc. 1671.

The same reasonable rule must apply between the vendor and his assignee. There was no express promise on the part of Matthews to convey a perfect title. The title did not pass through him. It passed directly from Starkey and wife to Bimrose. All Matthews was required to do was to convey the title which he had. It seems plain to us that Matthews neither expressly nor impliedly agreed to convey the title. As was said in *Big Bend Land Co. v. Hutchings, supra*, the vendee is entitled to the deed that his contract calls for. His contract in this case calls for a warranty deed from Starkey and wife, and that is all that the appellants are entitled to.

We are of the opinion that Bimrose might have protected himself by withholding sufficient of the last payment to satisfy the liens. But when he paid the money and permitted Matthews to receive it, he thereby elected to rely upon his remedy under the warranty of Starkey and wife.

The appellant also argues that the discharge of W. H. Starkey by the United States district court in bankruptcy

did not discharge Alice B. Sharkey, his wife. The property sold by Starkey and wife was community property and the contract was a community contract. Under the statutes of the state, the husband has the management and control of such property, but he shall not sell, convey or encumber the same without his wife joining in the conveyance. Rem. & Bal. Code, § 5918 (P. C. 95 § 29). When the husband was discharged in bankruptcy from the obligation of the contract, it must of necessity follow that the wife was also discharged, because her separate property is not subject to the community debt. *Sweet, Dempster & Co. v. Dillon*, 13 Wash. 521, 43 Pac. 637. Nor the separate debts of her husband. Rem. & Bal. Code, § 5916 (P. C. 95 § 9).

The judgment is therefore affirmed.

CROW, C. J., FULLERTON, MORRIS, and PARKER, JJ., concur.