STATE OF MISSOURI at the relation of L. T. HOYT, Relator, v. HOPKINS B. SHAIN, FRANCIS H. TRIMBLE and EWING C. BLAND, as Judges of the Kansas City Court of Appeals.—93 S. W. (2d) 992.

Division Two, April 23, 1936.

*Ira B. McLaughlin* and *Paul R. Byrum* for relator.

1210

*John N. Davis, Nelson H. Davis* and *Davis & Davis* for respondent.

BOHLING, C.—Certiorari to test the correctness of the ruling, under our latest controlling decisions, of the Kansas City Court of Appeals in a cause styled The Lampton Realty Co. v. Hoyt (Mo. App.), 80 S. W. (2d) 249, holding, briefly stated, the assignee of a contract for the purchase of real estate from the vendee-assignor personally liable to the vendor for certain monetary obligations imposed by said contract upon said original vendee as evidenced by the provisions of said contract and also, in part, by the negotiable note, given under said contract, of said vendee; and the correctness of the ruling of said court on a counterclaim interposed by said assignee asking damages on account of alleged fraudulent misrepresentations made in connection with the assignment of said contract to said assignee.

Upon certiorari proceedings to one of the Courts of Appeals, State ex rel. English v. Trimble (en banc), 320 Mo. 1113, 1118, 9 S. W. (2d) 624, 626(2), rules: ''The majority opinions of this court, where this question has been considered, have uniformly and repeatedly held that 'for the facts of the case we should go to the opinion' of the Court of Appeals. [Citing cases.] The only enlargement, if such it be, of our source of information above noted as to the facts in the case that has been recognized by a controlling opinion of this court is our ruling that recourse be had to any pleading, instruction or other written document referred to in the opinion and made the subject-matter of a ruling therein, and this on the theory that such reference makes the written document just as much a part of the opinion as if fully set forth therein. [Citing cases.]'' [See, also, State ex rel. v. Ellison, 281 Mo. 667, 674, 220 S. W. 498, 500(1); State ex rel. v. Trimble, 300 Mo. 92, 101(2), 253 S. W. 1014, 1016(2); State ex rel. v. Shain, 334 Mo. 617, 66 S. W. (2d) 826, 827(1).] In State ex rel. Ward v. Trimble, 327 Mo. 773, 778, 39 S. W. (2d) 373, 374(7, 8) we said: ''We are bound by the Court of Appeals' conclusion as to what the facts are, but we are not bound by the result it reaches by

applying the law to the facts, if that result conflicts with controlling decisions of this court.''

We set forth only such facts as we deem essential to a determination of this proceeding. [See 80 S. W. (2d) 249, for a more detailed statement of the case.]

■ The Lampton Realty Company, a corporation of the State of Louisiana, as vendor, contracted (designated bond for deed contract) with Roy O. Allen, as vendee, of New Orleans, Louisiana, on January 1, 1931, insofar as material to the issues properly presented and preserved for review here, for the sale and purchase of what was designated the Tilden lands or plantation, situated in Avoyelles Parish, Louisiana, as follows [80 S. W. (2d) l. c. 249]:

'' 'That the vendor agrees to sell, and the purchaser agrees to buy, the following described property, to-wit:

'' [Here follows a description of the real estate.]

'' 'The price to be paid by the purchaser shall be Twenty-two thousand one hundred eleven dollars and sixty-three cents ($22,111.-63), which shall be payable five years from this date, with six per cent per annum interest thereon, which interest is to be payable semi-annually, representing which amount the purchaser had made and executed and delivered to the vendor a note for like amount made payable to the said vendor.

'' [Here follows provisions giving the vendee the privilege of paying the note at any time, and the right to demand a deed after reducing the principal by $5,000, subject to a first mortgage or vendor's lien for the balance due.]

'' 'It is further agreed that should the purchaser fail to pay any one interest installment, then this contract shall be null and void, and such sums as the purchaser shall have paid shall be regarded by vendor as liquidated damages.

'' 'Should purchaser fail to pay the first semi-annual interest due under this instrument and this contract be terminated by reason of the foregoing, it is understood and agreed that purchaser shall become liable to vendor as liquidated damages, for having held this property off the market, in the sum of One Thousand Dollars ($1,000.00), which amount shall be due and payable immediately upon failure to pay the semi-annual interest due.

'' 'The purchaser obligates himself to pay all taxes which may be due on the above property for the period of time subsequent to December 31. 1930.

'' 'The purchaser likewise obligates himself to keep insured for a reasonable valuation all of the improvements on the above referred to premises.

'' 'The purchaser shall have the right to sell any of the natural resources only with the full consent and approval of the vendor, the proceeds to be credited on the principal of this contract.

" 'The purchaser takes cognizance of the rights granted by the vendor to the United States of America, under a deed . . . dated June 30, 1930, wherein this vendor sold and transferred to said United States of America. the full, complete and perpetual right, power and privilege to overflow in connection with the control of floods. on the Mississippi river and its tributaries . . . that is, on the subsequent transfer to be made of this property to him shall be subject to the said rights.

" [Here follows provisions regarding title and liquidated damages to purchaser.]

" 'R. O. Allen,
" 'The Lampton Realty Company,
" 'By E. W. Reid, Secretary.'
" ' (Seal)

"It appears that Roy O. Allen took possession of aforesaid real estate and made a contract with a Mr. Elliott for sale of timber on the place. Said contract, under the bond for deed contract, stood to be approved by the Lampton Company."

Roy O. Allen and L. T. Hoyt, of Kansas City, Missouri, entered into negotiations for the exchange of said Lampton-Allen contract for certain real estate of said Hoyt, and pending said negotiations Mr. Hoyt made a trip to and inspected the Tilden plantation, being accompanied on the inspection by Mr. Allen and a Mr. Thomas, a realtor of New Orleans.

"It appears that the trade, as first propositioned, failed to go through. Later a different proposition from Mr. Hoyt was submitted through a letter sent by a real estate agent in Kansas City, Missouri. In response to this letter, Mr. Allen came to Kansas City and Mr. Thomas accompanied him. Negotiations were again entered into which resulted in a deal expressed in a contract executed in Kansas City on August 6, 1931." Said contract (said Allen being designated party of the first part and said Hoyt as party of the second part), omitting recitations and provisions immaterial here, provided [80 S. W. (2d) l. c. 251]:

" 'The said party of the first part has agreed and does hereby agree, for and in consideration of the sum of One Dollar to him paid by the party of the second part, the receipt whereof is hereby acknowledged' to bargain, sell, assign, transfer and set over unto the said L. T. Hoyt, to his heirs and assigns, the said contract for the purchase of said lands and the said contract for the sale of said timber and all of his right, title, interest and claim, or demands in and to said contracts and in and to the lands therein described.

" '[In consideration for which, and the covenants in said contract mentioned, said Hoyt agreed to convey by warranty deed to said Allen certain apartment buildings, located in Kansas City, Missouri, and furniture, etc., belonging thereto; *subject* to certain deeds of trust

upon each of said properties in the sum of $75,000 each, and *subject* to certain *specifically* mentioned taxes and past due interest, and $3,502.67 due the Missouri State Life Insurance Company, which $3,502.67 was to be paid upon the execution of said deeds.]

·" 'It is further agreed . . . that first party hereby assumes and agrees to pay to the first Bancredit Corporation of Chicago, Ill., the sum of Nine Hundred and Sixty ($960.00) Dollars in monthly installments of One Hundred and Twenty ($120.00) each, commencing August 15th, 1931, in payment of insurance premiums advanced by said Bancredit Corporation.

" 'Said first party assumes the payment of all current bills upon said properties such as water, lights, gas, labor, etc. Said first party assumes the payment of the balance due for the purchase of electric refrigerators on said premises.

" 'Said first party agrees to pay W. J. Patterson the sum of Fifteen Hundred Dollars ($1,500.00) which said amount will be due said Patterson for commissions on the sale of said property, and to save said second party harmless for the payment of the same.

" 'Party of the first part represents that the amount to be realized or which will be realized from the sale of said timber and to be credited upon the consideration mentioned in the contract with the · Lampton Realty Company, will be at least Fifteen Thousand ($15,000) and that the party of the second part shall have the opportunity of satisfying himself that this estimate is correct and it is therefore agreed that, if after such investigation, party of the second part shall not be satisfied that the amount which will be realized will equal said sum or if there should be any liens or defects in title or other matters which would prevent said first party in assigning said contracts or conveying said property free from liens except as are mentioned in said contracts, then this contract shall be null and void at the option of the said second party. First party also agrees to obtain an agreement from said Lampton Realty Co., for the extension of the payment of the semi-annual interest due July 1st, 1931, to January 1st, 1932, said interest being upon the consideration of $22,111.65.

" 'Rents collected on and after Aug. 1, to belong to first party.' "

The day after the aforesaid contract, August 7, 1931, Mr. Hoyt sent the following telegram to E. W. Reid, "the president of Lampton Realty Company" (omitting caption and signature): " 'Am negotiating with Allen for Tilden plantation Stop Will you please wire me collect if assignment of his contract with you to me will be satisfactory to you Stop Also please advise minimum amount which will probably be realized in your opinion for your share of timber contract with Elliott.' "

Mr. Hoyt received the following reply as of the same day: " 'Retel. It will be satisfactory for Allen to transfer his contract to you Stop

Allen and I have estimated his commission on stumpage should be sufficient to pay for his contract with us. Market conditions to be considered.''

The record does not disclose any previous knowledge of the Allen-Hoyt negotiations (or of Mr. Hoyt) on the part of the Lampton Realty Company or its agents.

On August 11, 1931, Mr. Hoyt telegraphed Mr. Reid that he had closed the deal with Mr. Allen and asked for a statement of interest due, and, in response to communications, remitted $663.35 in payment of the first six months' interest on the Allen note, receipt of which was acknowledged.

Under date of August 25, 1931, and again on September 7, 1931, Mr. Reid wrote Mr. Hoyt requesting a ''written agreement'' or ''acknowledgment'' that Mr. Hoyt had assumed Mr. Allen's contract with the Lampton Realty Company.

Mr. Hoyt's reply, dated September 7, 1931, states:

'' 'I was in Louisiana last week and rather expected to see you on my return trip here but had to come back by train instead of by auto as originally intended and so was unable to have the pleasure of calling upon you.

'' 'Replying to your letter—of course I intend to carry out the terms of the contract as imposed upon Allen. In fact, the contract would be of no benefit to me unless I did carry them out.

'' 'If you wish a formal agreement of assumption of the contract and will prepare it and send it to me, I will sign and return it.' ''

''Further communications were had and it is shown that Mr. Hoyt went to Louisiana and went to the place of business of the Lampton Company and took up the matter personally with Mr. Reid and signed the Allen note, also the contract, designated bond for deed contract, on September 23, 1931.''

The opinion of the Court of Appeals sets forth Mr. Hoyt's testimony detailing his conversation with Mr. Reid on September 23, 1931 [80 S. W. (2d) l. c. 253], which is stated to be the only conversation shown to have occurred between said parties. We deem it unnecessary to detail this conversation in view of certain conclusions of fact in the opinion of the Court of Appeals.

The second and third semi-annual interest installments became due on the note, as did also the taxes payable January 1, 1932, under the contract, and, Mr. Hoyt making default in payment, correspondence passed between the Lampton Realty Company and Mr. Hoyt concerning these matters [80 S. W. (2d) l. c. 255].

The Lampton Realty Company instituted suit, in two counts, against Mr. Hoyt. Plaintiff sought judgment in the first count under the note for the two semi-annual interest payments in default; and in the second count under the contract for the taxes falling due

January 1, 1932, which had been paid by said Lampton Realty Company.

The opinion of the Court of Appeals incorporates therein by reference the amended answer of Mr. Hoyt. Said answer, as shown by the record insofar as material, was a general denial, and, to count one of the petition, alleged:

"Further answering said Count 1 defendant admits that defendant entered into a certain written contract with the plaintiff and one Roy O. Allen bearing date of January 1, 1931, but executed by this defendant on or about the 23rd day of September, 1931, by the terms of which this defendant assumed and agreed to pay the liability of said Roy O. Allen under the terms of said contract and pursuant thereto.

"Defendant further admits that on the last named date he executed the note mentioned in plaintiff's petition.

"Further answering defendant states that said contract and said note were wholly without consideration and void and further states that plaintiff's signatures thereto were obtained by a wilful, wicked and unlawful conspiracy between the plaintiff, one E. W. Reid, Roy O. Allen, one C. J. Thomas and one Thos. B. Elliott," to defraud plaintiff and that pursuant to said conspiracy said named conspirators and the agents, servants and vice-principals and employees of the plaintiff did make certain material, false and fraudulent representations, whereby, etc. defendant was misled and defrauded into executing said note.

The answer to the second count made like admissions with reference to the contract and alleged like defenses.

Said answer also contained a counterclaim wherein defendant asked damages for the fraud alleged to have been perpetrated upon defendant by plaintiff, its agents, servants and employees acting in conspiracy with one Roy O. Allen, Thos. B. Elliott, J. C. Thomas and E. W. Reid in the consummation of the Allen-Hoyt transaction, the signing by defendant of the note and contract sued on in plaintiff's petition and the payment of one semi-annual interest installment on said note by defendant.

Upon appeal the judgment of the trial court for defendant on plaintiff's causes of action and in the sum of $1,000 for defendant on his counterclaim was reversed and the cause remanded with instructions to enter judgment for plaintiff on the first and second counts of plaintiff's petition and against defendant on his counterclaim.

The opinion of the Court of Appeals, as to plaintiff's cause of action, concludes (80 S. W. (2d) l. c. 260): "Based upon the documentary evidence and the admissions contained in the first paragraph of count one and paragraph one of count two in defendant's first answer, which was re-embodied in the amended answer, and based

upon defendant's admissions in letters sent by him, we conclude that it was error for the trial court to refuse plaintiff's instruction directing a verdict for plaintiff as to the first and second counts of plaintiff's petition." The opinion also states (80 S. W. (2d) l. c. 259): "The letter of September 7, 1931, set forth above, clearly shows that the assumption of obligation was then existing and but awaited a mere formality, which was afterwards carried out by signing the note and contract."

Defendant below (relator here) contends the ruling of the Court of Appeals, under the facts in evidence, that defendant assumed the personal liability of Allen for performance of the bilateral executory Lampton-Allen contract and that the affixing of defendant's signature to the said contract and Allen note was a mere formality conflicts with our rulings to the effect that to hold the grantee in a deed conveying real estate subject to mortgage personally liable for the mortgage debt secured by said real estate there must exist an express agreement to that effect.

Speaking to the personal liability of the grantee in a deed conveying real estate securing an indebtedness of the grantor, Hall v. Morgan, 79 Mo. 47, 52(5), states: "Unless there was an express agreement to that effect, he [the grantee] would not be personally liable for the mortgage debt." Hall v. Morgan was approved in McFarland v. Melson, 323 Mo. 977, 986, 20 S. W. (2d) 63, 67(6), where ELLISON, C., speaking of an oral agreement to assume, said: "The general rule is that no particular form of words is necessary to constitute a contract of assumption, and that an agreement to assume may arise by implication. [19 R. C. L., sec. 151, p. 380, 41 C. J., sec. 769, p. 723.] But it is true the evidence to establish the contract must be clear and convincing; and that it must be made to appear the parties agreed—that there was a meeting of minds—on the proposition that the grantee should make the mortgage debt his own, or else the circumstances proven must be such as to estop the grantee from denying the liability, in which case the law implies a promise on his part." [McFarland v. Melson was followed in Carter v. Burns, 332 Mo. 1128, 1143, 61 S. W. (2d) 993, 940(8).] The same rules of law govern the assignment of Allen's rights under the Lampton-Allen contract for the sale and purchase of the Tilden lands. [See comment and reasoning in Wiggins Ferry Co. v. Chicago & A. Railroad Co., 73 Mo. 389, 403(1).] Only written instruments are involved in the instant case.

No express agreement on the part of Hoyt to assume personal liability for the obligations imposed upon Allen under the Lampton-Allen contract is found in the Allen-Hoyt contract. The specific provisions in the Allen-Hoyt contract that Allen discharge certain obligations therein mentioned, including some connected with the property exchanged to Allen by Hoyt, and that Hoyt deed said property

to Allen subject to certain deeds of trust (imposing no personal liability on Allen for said deeds of trust debts [Hall v. Morgan, supra]), while omitting therefrom any covenants imposing personal liability upon Hoyt to discharge the obligations imposed upon Allen by the Lampton-Allen contract, is strong and persuasive evidence (not only that as between Allen and Hoyt no meeting of minds existed imposing upon Hoyt any personal liability for the discharge of Allen's obligations under the Lampton-Allen contract but, on the other hand) that said Allen and Hoyt understood Hoyt did not assume personal liability for Allen's obligations under said Lampton-Allen contract; for, had it been otherwise, it is but a fair and proper evidentiary inference that since the contract expressly provided that Allen assumed certain specific obligations, including some incurred in connection with the Hoyt property, he, Allen, would have insisted upon the obligations assumed by Hoyt to be likewise written into said Allen-Hoyt contract. In the absence of any showing to the contrary, it is to be presumed that any formal assignment of the Lampton-Allen contract by Allen to Hoyt conformed with the terms of said Allen-Hoyt contract. We do not find the formal assignment in the opinion of the Court of Appeals.

While defendant's answer to the respective counts of plaintiff's petition admits the execution by defendant on September 23, 1931, of the Lampton-Allen contract and Allen note, which were originally executed January 1, 1931, mentioned in plaintiff's petition, it pleads the ineffectiveness of said execution by defendant of said documents because said execution was not supported by a consideration and was fraudulently obtained. We fail to find in said allegations any express admission of a valid personal assumption by defendant of said contract and note. The execution is admitted but its legal efficacy is challenged.

The Allen-Hoyt contract is expressly conditioned upon Hoyt's being satisfied, after investigation, as to all matters which might prevent said Allen from assigning said contract or conveying said property in conformity with said contract, and Hoyt's inquiry of August 7, 1931, as to the attitude of the Lampton-Realty Company to the assignment may well fall within the above clause of said contract. The Lampton Realty Company's approval of the Allen-Hoyt transaction was not conditioned upon the assumption of personal liability by Hoyt of the Allen-Lampton contract, nor is it to be construed as amounting to a novation [Edgell v. Tucker, 40 Mo. 523, 528].

Mr. Hoyt's remittance of the semi-annual interest of $663.35 in August, 1931, was for the protection of his investment and rights under the Allen-Hoyt transaction and not an assumption of personal liability under the Lampton-Allen contract or note evidencing the

indebtedness therein mentioned [McFarland v. Melson, 323 Mo. 977, 988, 20 S. W. (2d) 63, 67(10)].

Mr. Hoyt's letter of September 7, 1931, does not, as we read it, admit that under the Allen-Hoyt transaction he assumed personal liability under the Lampton-Allen contract. Hoyt took the assignment of the Lampton-Allen contract subject to all the burdens to which it was subject in the hands of Allen; and his statement "of course I intend to carry out the terms of the contract as imposed upon Allen;" and "in fact, the contract would be of no benefit to me unless I did carry them out" recognized the legal obligations imposed upon Allen under the Lampton-Allen contract as a condition to his (Hoyt's) exaction of performance thereunder by the Lampton Realty Company.

Absent a valid agreement at the time of the Allen-Hoyt contract whereby Hoyt assumed personal liability for the performance of the Lampton-Allen contract, Hoyt's willingness to execute a formal agreement of assumption, expressed in said letter of September 7, as well as his subsequently affixing his signature on September 23, 1931, to said Lampton-Allen contract and Allen note of January 1, 1931, to be legally binding and enforceable as a personal obligation on his part, needed a consideration to support it. "Nothing is better settled in this state than that a subsequent agreement which does not form any part of an original contract, nor is supported by the original consideration thereof, nor by any new consideration, is a mere *nude pact*, of no force and validity." Macfarland v. Heim, 127 Mo. 327, 333, 29 S. W. 1030, 1031, and cases cited. [See, also, Allen West Comm. Co. v. Richter, 286 Mo. 691, 703(3), 228 S. W. 827, 831(2); Lingenfelder v. Wainwright Brewing Co., 103 Mo. 578, 593, 15 S. W. 844, 848.]

Under the issues in the instant case, if the minds of the parties did not meet upon any agreement whereby Mr. Hoyt personally assumed Mr. Allen's obligations under the Lampton-Allen contract, the courts should not make such a contract of assumption for the parties or subject defendant to a personal liability which he had not legally assumed, but, so far as evidenced by the Allen-Hoyt contract, inferentially had declined to assume.

The foregoing brings the facts down to September 23, 1931. Defendant testified that his signing of the Allen note and the Lampton-Allen contract was at the close of his conversation with Mr. Reid (wherein certain fraudulent representations are attributed to Mr. Reid) and just immediately prior to his leaving Mr. Reid's office [80 S. W. (2d) l. c. 254].

The note sued on in the first count of the petition grew out of the Lampton-Allen contract. The contract and note were executed at the same time, are interdependent, should be construed together [Canton Trust Co. v. Durrett, 320 Mo. 1208, 1213, 9 S. W. (2d) 925,

927(1); Wilson v. Reed, 270 Mo. 400, 406, 193 S. W. 819, 820(6); Stix, Baer & Fuller D. G. Co. v. Ottawa Realty Co., 273 Mo. 376, 390, 202 S. W. 577, 580(1)]; and in the instant suit the cause of action on said note (as well as the cause of action on said contract) was subject to the same defenses as if the note was nonnegotiable [Sec. 2686, R. S. 1929, Mo. Stat. Ann., p. 679; Long v. Mason (en banc), 273 Mo. 266, 278, 200 S. W. 1062, 1065(3)], including the pleaded defenses, as well as possibly others, of fraud, if any, occurring up to the time Hoyt otherwise legally assumed Allen's obligations, and want of consideration.

The ruling, under the issue as presented, of the Court of Appeals that defendant's execution on September 23, 1931, of said Allen note and said Lampton-Allen contract was a mere formality conflicts with controlling decisions of this court. We deem it unnecessary to discuss other alleged conflicts.

The above discussion passes on defendant's defense to plaintiff's cause of action, but does not necessarily rule, under the facts here involved, defendant's cause of action stated in his counterclaim. This, because from the conclusions of fact appearing in the opinion of the Court of Appeals it appears defendant, prior to September 23, 1931, *subjected* himself to (as distinguished from *assuming personal liability* for) the obligations imposed upon Allen under the Lampton-Allen contract.

Defendant's counterclaim was based upon allegations charging a conspiracy between plaintiff, E. W. Reid, Roy O. Allen, C. J. Thomas and Thomas B. Elliott to defraud defendant. As hereinbefore stated, on certiorari we go to the opinion of the Court of Appeals [State ex rel. English v. Trimble, supra], not the testimony of the witnesses in the record [State ex rel. v. Trimble, 322 Mo. 360, 366(4), 20 S. W. (2d) 17, 19(6)], for the facts of the case, being bound by the conclusions of that court as to the facts [State ex rel. Ward v. Trimble, supra]. We find, among the conclusions of fact set forth in the opinion the following:

"We conclude, based upon the *showing of the record* and upon the facts of record set forth above, that the defendant is shown conclusively to have *subjected* himself to all the terms and obligations of the Allen contract with plaintiff, prior to September 23, 1932" [80 S. W. (2d) l. c. 259]. (Italics ours.)

We do not find any facts stated in the opinion of the Court of Appeals establishing actionable fraud on the part of Mr. Elliott; nor can we say that the conclusions reached exonerating Mr. Thomas are not in accord with the record made in the case, as stated in said opinion.

The misrepresentations attributed to Mr. Reid as of September 23 are immaterial on the issue under discussion, as they could not have caused defendant to enter into the Allen-Hoyt contract theretofore

effective between said Allen and Hoyt, and defendant may not justly base his counterclaim on what transpired subsequent to his effective acceptance of said contract. We find nothing set forth in the Court of Appeals' opinion making actionable Mr. Reid's telegram of August 7, 1931. Defendant asked for Mr. Reid's "opinion." Mr. Reid replied giving an "estimate" of Allen's "commission on the stumpage," and coupled it with the qualification: "Market conditions to be considered."

While the Court of Appeals' opinion states there is evidence of misrepresentations which might have probative force in an action against Allen, the conclusion is: "There is nothing shown wherein a court would be justified in attributing any remarks made by Allen as being uttered as the agent or representative of plaintiff herein."

From the facts and conclusions of fact on this issue as given in the opinion of the Court of Appeals, we think its conclusion on the merits, based upon the rule of law that "neither conjecture nor surmise may be made the basis of an action for conspiracy and fraud" [Wolfersberger v. Miller, 327 Mo. 1150, 1165, 39 S. W. (2d) 758, 764(13)], is not made to appear to be in conflict with controlling decisions of this court.

It is not the function of a writ of certiorari to a Court of Appeals to deal with the case on its merits or demerits as in the case of an appeal or writ of error. We quash an opinion and record pursuant thereto of said courts only because of conflicts with controlling decisions of this court [State ex rel. v. Trimble, 308 Mo. 597, 601(1), 274 S. W. 416, 417(1)]; but do not tell that court what to do when it undertakes to make a new record in the case [State ex rel. v. Ellison, 272 Mo. 571, 580(2), 199 S. W. 984, 987(3)]. Courts of Appeals are courts of last resort, and, acting within their jurisdiction and not in violation of our decisions, determine litigated issues as their judgment dictates with as great a freedom as this court. [State ex rel. v. Ellison, 269 Mo. 151, 156, 190 S. W. 274, 275(2).]

Although the first two paragraphs herein quoted of defendant's amended answer are not quoted in the opinion of the Court of Appeals, the same result is to be had from a consideration of the statements concerning defendant's answers and the quotations therefrom in said Court of Appeals' opinion.

Accordingly, that portion of the opinion of respondents ruling plaintiff's cause of action and the record made pursuant thereto should be quashed. It is so ordered. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.