Raymond L. HAARMANN, et al., Plaintiffs-Respondents,

v.

C. Ivan DAVIS, et al., Defendants-Appellants.

No. 64150.

Supreme Court of Missouri, En Banc.

May 31, 1983.

David W. Keathley, Poplar Bluff, for defendants-appellants.

Daniel T. Moore, L. Joe Scott, Poplar Bluff, for plaintiffs-respondents.

DONNELLY, Judge.

This case was transferred by this Court upon application of plaintiffs-appellants after opinion by the Southern District of the Court of Appeals. Rule 83.03. The trial court judgment was in favor of plaintiffs-appellants in the amount of $3,252.79. The Southern District reversed. We now decide this case as if on original appeal. Mo. Const. art. V, § 10.

Plaintiffs Raymond and Norma Haarmann, husband and wife, entered as buyers into an "Installment Contract for Sale of Real Estate" on July 8, 1973, with Arrowhead Resorts, Inc., a Missouri corporation. The contract provided that plaintiffs would purchase Lot 24 in a Wayne County subdivision for $2,900, payable by a $300 down payment and monthly payments of $40.53. Total payments, including finance charges, amounted to $3,404.52. The contract called for delivery of a warranty deed conveying merchantable title to the Haarmanns upon completion of the payments. In addition, the contract provided that all covenants and agreements therein contained should extend to and be obligatory upon the successors and assigns of the buyer. There was no analogous provision with respect to the assigns of the seller.

Plaintiffs made the down payment and twelve monthly payments to Arrowhead until July 1974. On July 19, 1974, defendant C. Ivan Davis wrote a letter to plaintiff Raymond Haarmann informing him that the contract between Arrowhead and plaintiffs had been assigned "to myself and wife." The letter requested that the plaintiffs send the August 1, 1974, payment, and all subsequent payments, to Davis. The letter also stated, "Your deed is held by [a specified attorney].... It will be mailed to you upon final payment." Included with this letter was one dated September 24, 1973, from Arrowhead to the Davises stating that a contract for sale between Arrow-

head and the Davises was paid by Arrowhead with its pledge of the Haarmann contract, among others. No copy of that contract for sale was included, nor was such contract later introduced at trial.

From August 1974, until April 1980, plaintiffs made monthly payments to defendants. When the final payment was made, Willodean Davis marked the payment record "paid in full", signed it, and sent it to the plaintiffs. With the payment record, Davis included a quitclaim deed to Lot 24 in which the Davises were designated grantors and the Haarmanns grantees.

Immediately thereafter, the Haarmanns brought this action against the Davises in two counts, one for actual damages of $3,400 for breach of contract, the other for punitive damages for fraudulent misrepresentation. The Davises offered no evidence, and were not present at trial. The trial court, sitting without a jury, entered in favor of the Haarmanns for $3,252.79. The Davises appealed.

The Davises contend that there was no evidence that they intended or promised to assume the obligations of Arrowhead, or that plaintiffs were led to believe they would, or that plaintiffs changed their position in reliance on such a belief. In particular, they argue that although Arrowhead gave them its right to receive a portion of plaintiffs' payments by assignment or pledge, they did not thereby assume or intend to assume Arrowhead's contractual obligations.

■ By assignment of an executory bilateral contract, an assignor may transfer his rights, intending to perform his duties himself, or he may transfer his rights and delegate the duties. *Hahn v. Earth City Corp.*, 625 S.W.2d 640 (Mo.App.1981), 4 Corbin, Contracts § 906 (1951). Traditionally, the assignee of a seller's interest in a bilateral executory contract for sale of land is under no obligation to convey the same title, unless he assumes the obligations of the vendor. *Pelser v. Gingold*, 214 Minn. 281, 8 N.W.2d 36 (1943); *Thompson v. Lincoln Nat. Life Ins. Co.*, 114 Mont. 521, 138 P.2d 951 (1943); *East Asiatic Co. v. Corash*,

34 A.D.2d 432, 312 N.Y.S.2d 311 (1970); *Bimrose v. Matthews*, 78 Wash. 32, 138 P. 319 (1914); 92 C.J.S. Vendor & Purchaser, § 310b(3), p. 191. *See also* 6A C.J.S. Assignments, § 95, p. 750. This holds true even if the contract for sale between the buyer and seller states that it binds their respective assigns. *Pelser v. Gingold, supra; Bimrose v. Matthews, supra.* The American Law Institute concurs:

> "A contracts to purchase land from B. The contract provides that it is to bind the assigns of the parties. A assigns 'the contract' to C, and B assigns 'the contract' to D. These facts themselves do not show a promise by D; the Institute expresses no opinion as to whether they show a promise by C."

Restatement, Second, Contracts § 328, Illustration 4.

■ The general rule in Missouri is "that a mere assignment of rights under an executory contract [pertaining to real estate] does not cast upon the assignee any of the personal liabilities imposed by the contract under the assignor." *Senn v. Manchester Bank of St. Louis*, 583 S.W.2d 119, 127 (Mo. banc 1979). *Cf.* § 400.2-210, RSMo 1978 [pertaining to contract not involving real estate]. However, under certain circumstances, an assignee may be held in Missouri to have impliedly assumed the contractual obligation of the assignor. *State ex rel. Hoyt v. Shain*, 338 Mo. 1208, 1218, 93 S.W.2d 992, 997 (1936); *see also McFarland v. Melson*, 323 Mo. 977, 986, 20 S.W.2d 63, 67 (1929) and *Carter v. Burns*, 332 Mo. 1128, 1143, 61 S.W.2d 933, 940 (1933). We note language in *Senn, supra*, quoting *Walker v. Phillips*, 205 Cal.App.2d 26, 22 Cal.Rptr. 727, 731 (1962), to the effect that an assignee's assumption of the obligations of the contract "may be implied from acceptance of benefits under the contract." We now disavow such a broad rule. While an assignee's assumption of contractual obligations may be implied from clear and convincing evidence that the parties agreed to a contract of assumption, mere acceptance of benefits under the contract of sale is not sufficient. However, the result in

*Senn* did not depend upon the *Walker* Rule, but upon the particular facts of the *Senn* case. *Senn* is distinguishable.

▮ As in *Shain, supra,* there was no express agreement on the part of the Davises to assume personal liability for the obligations imposed upon Arrowhead under the Arrowhead/Davis contract. We turn then to whether a contract of assumption was created by implication. Under the circumstances of this case, the Davises, as assignees, cannot be held to have impliedly assumed the contractual obligations of the assignor. The "Contract of Sale" mentioned in the September 24, 1973, letter from Arrowhead to the Davises was not introduced into evidence. The September 24 letter itself concerns only the right of the Davises to payments under the Arrowhead/Haarmann contract and those between Arrowhead and several other parties. That letter contains no evidence of an assumption of Arrowhead's obligations under those contracts. The July 19, 1974, letter from Mr. Davis to Mr. Haarmann does state that "Your deed . . . will be mailed to you upon final payment." However, that statement is ambiguous as to the nature of such deed. And, even if the deed referred to was a warranty deed, the statement does not constitute a binding promise from Davis to Haarmann. As it was not accompanied by consideration, it was a *nudum pactum.* Nor can the July 19, 1974, letter be enforced on the grounds of equitable or promissory estoppel. Both require an injury or detriment resulting from reliance on the acts of another. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.,* 460 S.W.2d 651 (Mo.1970); *Edwards v. Smith,* 322 S.W.2d 770 (Mo.1959); *Katz v. Danny Dare, Inc.,* 610 S.W.2d 121 (Mo.App.1980). There has been no showing in this case that plaintiffs' conduct was in any way affected by the letter from Mr. Davis. Nor was Mr. Davis' statement in the letter that the attorney held the deed shown to be a misrepresentation. In an interrogatory, Davis claimed he understood that the attorney had the deed but later learned that he did not.

The judgment is reversed.

WELLIVER and HIGGINS, JJ. and KELSO, Senior Judge, concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., and GUNN, J., dissent and concur in separate dissenting opinion of BLACKMAR, J.

BILLINGS, J., not sitting.

**BLACKMAR,** Judge, dissenting.

I agree with the statement in the principal opinion that the assignee of the interest of a seller in a real estate contract does not, by entering into the assignment or by receiving subsequent payment of installments, necessarily become obligated to the buyer for the performance of the seller's obligations under the initial contract. This conclusion is supported by the Missouri authorities, *Senn v. Manchester Bank of St. Louis,* 583 S.W.2d 119 (Mo. banc 1979), and, as the citations in the principal opinion demonstrate, appears to represent the weight of authority among other jurisdictions. The Restatement of Contracts intimates a trend toward a finding of assumption of liability by an assignee of contracts, but seems to treat real estate contracts in a different manner and to support the Missouri rule as to the latter. See Restatement (Second) of Contracts, Sec. 328, Illustration 4.

The assignee of the seller's interest, however, may expressly assume the seller's obligations to the buyer as a part of the assignment transaction. *Senn, supra.* To the extent that the principal opinion holds that any such undertaking requires separate consideration *moving from the buyer,* I disagree. If the assignee covenants to assume the seller's obligations to the buyer, the buyer is a third-party beneficiary of the assignment contract. A third party beneficiary may enforce the benefits conferred upon him or her without a showing of additional consideration. *Slate v. Boone County Abstract Co.,* 432 S.W.2d 305 (Mo.1968). Restatement (Second) of Contracts, Sec.

304. The consideration which supports the assignment contract, therefore, is sufficient to support the assignee's obligation to the beneficiary.

*State ex rel. Hoyt v. Shain,* 338 Mo. 1208, 93 S.W.2d 992 (1936), does not indicate a different conclusion. There the buyer's interest in a contract to purchase real estate was assigned, and the assignee did not assume the buyer's obligations to the seller as a part of the assignment transaction. After the closing, the assignee indicated to the seller that he was willing to enter into an express assumption, if requested. This Court held, quite appropriately, that there was no consideration for the assignee's subsequent assumption. The assignment transaction was a closed one, and the assignee was without power to add to it. The later promise to another party required independent consideration, which was not shown.

The defendant sellers were duly notified of the setting of the present case for trial, and did not appear, choosing instead to rest their interests with their attorney. The trial judge's decision to proceed is not here challenged. In this court-tried case, we are obliged to defer to the trial judge's findings of fact, if supported by evidence. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976). The evidence shows that in the defendants' first communication to the plaintiff buyers, giving notice of the assignment, the defendants undertook to provide information as to how the buyers would obtain their warranty deed after completing payment of the purchase price. The trial judge might well have believed that the defendants' giving of this information indicated that they had assumed the seller-assignor's obligations under the contract. The contract of assignment, as the principal opinion points out, is not in evidence, but the defendants are certainly in the best position to furnish information about the terms of assignment. The conclusion is fortified by the showing that this assignment was part of a series of assignments of contracts for the sale of lots. *Senn, supra.* The trial judge was justified in deciding the case on the basis of the record before him, and his conclusion as to liability is supported by the evidence.

It might be objected that there is no evidence in the record that the defendants ever obtained title to the property in issue, and that, without title, they were in no position to execute and deliver an effective deed. The record shows that they did execute and tender a quitclaim deed (which was manifestly not sufficient under the contract), but the quitclaim deed might simply operate as a waiver of defendants' claims to the lot, after the final payment was received, and not as any indication of title or power to convey. The transcript of the trial shows, however, that defendants' counsel suggested that his clients could provide a warranty deed, and it would not be inappropriate for the trial court to take this suggestion into consideration, in the absence of further information which the defendants were equipped to give and did not.

In spite of my conclusion that there was a basis for finding liability, I am not willing to affirm the judgment as it stands. The trial court entered judgment for the full amount of the payments of principal and interest which the plaintiff had made to the seller and to the defendants as assignees. The plaintiffs, following the signing of the contract, were entitled to possession. This is shown clearly by the contract provisions requiring redelivery of possession of the land and any improvements to the seller in the event of the buyer's default. The court at the very least should have determined whether possession of the land for the period between the execution of the contract and the date of trial had any value, and, any value so found should have been subtracted from the judgment. There is, furthermore, no showing of the actual damages from nondelivery of the deed. The plaintiffs may simply have made a bad bargain. The court on retrial might conclude that the plaintiffs are entitled to no relief other than the tender of a proper warranty deed from the titleholder.

Because, in my view, the case should be remanded for further proceedings, I believe that the trial court should be directed to

allow the defendants' third-party petition, in which they ask that the seller, Arrowhead Resorts, Inc., be brought into the case so that the defendants' rights over against Arrowhead may be adjudicated. There is great advantage in having all parties necessary to a complete resolution of the controversy before the court. There was no abuse of discretion on the part of the trial court in failing to sustain the application for leave to file a third-party petition, inasmuch as it was not presented until the day of trial, but, if the case is remanded, there would be ample time to order additional parties in, allow the parties to amend their pleadings, and hear evidence on all aspects of the case.

I therefore dissent from the outright reversal. I would reverse and remand the case for further proceedings consistent with the views just expressed.