STATE OF MISSOURI at the relation of H. L. GOLLODAY and THE FOX OZARK THEATRE COMPANY, a Corporation, Relators, v. HOPKINS B. SHAIN, EWING C. BLAND and ROBERT M. REYNOLDS, as Judges of the Kansas City Court of Appeals.—110 S. W. (2d) 719.

Court en Banc, December 9, 1937.

*Hunter & Chamier* for relators.

FRANK, J.—Certiorari to quash an opinion of the Kansas City Court of Appeals in the case of Dollie Myers v. H. L. Golloday and the Fox Theatre Company, a Corporation. In that case plaintiff recovered a judgment of $4000 for personal injuries alleged to have been caused by a fall on a waxed floor in the lobby of defendants' theater located in Brookfield, Missouri. This proceeding was brought to quash the opinion of the Court of Appeals affirming that judgment.

At the trial of the Dolly Myers case in the circuit court defendants' demurrer to the evidence was overruled. That ruling was affirmed by the Court of Appeals. Relator contends that such ruling is in conflict with the ruling of this court on a similar state of facts in the case of Ilgenfritz v. Missouri Power & Light Company, 340 Mo. 648, 101 S. W. (2d) 973. That part of the opinion of the Court of Appeals pertinent to this question follows:

"It is true that a verdict based upon mere guess, conjecture, supposition, and speculation cannot stand and that a verdict, to stand, must be based upon competent, substantial evidence. The authorities cited in their brief by defendants under this complaint fully sustain such proposition. It is unnecessary to review them. However, we cannot agree with defendants in their contention that plaintiff's evidence directed to a showing of the condition of the floor at the time plaintiff fell thereon, as being slick and unsafe and dangerous to walk on by reason of wax, oil, or other substance negligently placed thereon by defendants, was based on mere conclusions, speculations, conjectures, and suppositions of witnesses. We do not think that plaintiff's evidence is subject to such criticism. Such facts were shown by substantial and competent testimony of witnesses who passed over the floor at or about the same time with plaintiff who testified substantially to the fact that, at the time plaintiff fell thereon, the floor presented a smooth, glossy, 'shiny,' and slick appearance and that it was in fact slick and slippery so that one was liable to slip thereon. The testimony of plaintiff shows that, at the time she fell, she slid thereon and that her whole body scooted on the floor after she fell and that the floor was slick and 'shiny' looking. The testimony of Mrs. Straub, her sister, who was with her at the time, was that she observed after plaintiff fell that the floor was slick—that it looked slick and that it was slick. Being asked if she said that it was slick because her sister fell on it, she replied, 'I said I noticed the floor after she

fell, and I noticed it was slick.' She was asked, 'Why do you say it was slick?' and answered, 'Because it was slick.' Mrs. Lotus Snider, a witness for plaintiff, was asked to tell what she observed about the floor on the day that plaintiff fell and answered: 'I observed when I went in the front—my cousin was right behind me—I got ahold of her arm to keep from slipping. It was sort of a polished linoleum.' Miss Earleen Snider, a witness for plaintiff, was asked to tell what she noticed about the floor on the day that plaintiff fell and replied, 'Well, I noticed it being a little bit slick. I guess I noticed because she—' referring to her cousin, Mrs. Lotus Snider—'slid when we went in, and on account of it being damp on the outside, too.' She was asked if she had noticed its being slick before and answered that she had and that she always noticed the floor and exercised particular caution on that account. Mrs. Ethel Moling, a witness for plaintiff, testified that she noticed the floor was rather slick and so watched her step. Mrs. Irene Christy, a witness for plaintiff, was asked the following questions on her cross-examination and made the following answers thereto:

"'Q. Now, did you notice anything about the floor there? A. Very slick. . . .

"'Q. What did you notice? Describe the condition of the floor. A. Slick, bright finish.

"'Q. How? A. Just a slick, glassy-looking finish.

"'Q. And it looked glassy, is that what you mean, Mrs. Christy. The floor looked shiny? A. Yes; shiny.

"'Q. And because it looked shiny and glassy, that's why you say it was very slick, is it? A. I know it was slick. You know how you walk across a slick floor and kind of slip on it.

"'Q. How's that? A. You can walk across a slick floor and kind of slip on it.

"'Q. Did you slip on it? A. Not enough to fall, but you could feel a slick substance. You know how it is when you walk over a slick floor.'

"On her redirect examination, she was asked the following questions and made the following answers:

"'Q. Describe what the effect was in walking over this floor. A. A slick, slippery condition.

"'Q. How's that? A. A slick, slippery condition.'

"Again on her recross-examination, the following questions were asked her and the following answers were made:

"'Q. Now, you say that it was in a slippery condition. Now, just tell us why you say that? A. Well, I just noticed as I walked in—I really can't tell you. You know the feeling of walking on—

"'Q. (interrupting) Isn't it just because it looked shiny that you say that? A. No, you have a feeling this—

(Interruption and colloquy of court and counsel.)

" 'Q. I believe you made an answer to a question in answer to Mr. Owen to the effect that by walking on it you knew it was slick? A. Yes, sir.

" 'Q. Now, explain what you mean by that. A. Well, whenever you step on a slick object you can feel your feet slide.

" 'Q. Did your feet slide? A. They didn't slide out from under me, but you can feel them slide back.

" 'Q. Did your feet slide back that day? A. Yes, sir.

" 'Q. Both of your feet? A. Not at the same time, but when you step on an object like that you can feel it.'

"There is, thus, direct, affirmative, competent evidence that the floor in question was in a slick, slippery, unsafe, and dangerous condition by witnesses who walked upon and saw the same.

"There is likewise evidence that the floor in question had been regularly treated twice a week since it was laid, May 4, 1935, with a wax preparation known as Lightning Luster and that it had been treated with such preparation two days prior to plaintiff's injury thereon. That is, said preparation had been applied to the floor over its entire surface with a brush dipped in the preparation and brushed over the floor, giving to the floor a highly-finished appearance, a smooth and glossy finish. Such preparation was about nine per cent wax, three per cent other solids, and the balance water. It is also common knowledge that the application of wax to the surface of a smooth floor, giving to it the appearance of a highly finished floor, tends to make it slick, slippery, and dangerous to walk on.

"The evidence was conflicting as to whether such preparation applied to the floor in question made it slick and dangerous and unsafe or otherwise. All of plaintiff's witnesses who testified as to the condition of the floor, its having a 'shiny,' glossy, smooth, and slick appearance, testified that it was in fact slick and that one would slide thereon in passing over it, except the defendant Golloday who testified in effect that, even though such preparations gave to the surface of the floor a smooth and glossy appearance, it did not necessarily make it slick. Other witnesses, for defendants, gave evidence to the effect that, while the preparation in question gave to the floor a smooth, glossy and highly-finished appearance, it did not in fact make it slick and slippery and dangerous to use.

"Whether the floor was slick and slippery and dangerous to use thus became a question for the jury and, as far as defendants' contention under this point is concerned, the defendants' requested instructions were properly denied.

"8. Defendants make the further point that, under the evidence in the record, plaintiff was, as a matter of law, guilty of contributory negligence; that she stepped on the floor fully aware of its con-

dition and aware that it was so slick as to be dangerous to walk on and failed to use due care for her own safety in walking thereon; that she had observed and walked over the floor a number of times and knew how slick it was and what care was necessary to be used in order to walk over it with safety; that she knew that the danger in the floor, if any, was in its slick condition; and that she knew everything to be known about the floor which might cause it to be unsafe.

"It is true that plaintiff had, upon several occasions prior to the time that she fell, walked on and over the floor in question; but on such occasions there were usually large crowds on the floor and her opportunities for examination and observation of its condition were very limited. On the day in question, when she entered the lobby from the street and stepped on the floor, she fell before there was any real opportunity for inspecting it. She testified that, while she saw the floor when she entered the lobby, she made no inspection of it; that it was light in the lobby and she could see the floor; that she opened the door to the lobby and walked in and her feet went out from under her and she fell; that she never looked at the floor but that she could see that it was dark and 'shiny;' and that she did not know whether it was wet or dry. She testified that it was smooth and slick and that she slipped on it and slid on it after she fell and that her whole body scooted on the floor.

"It does not appear that the unsafe and dangerous condition of the floor was readily apparent upon mere observation or that plaintiff had any knowledge at the time of the wax preparation with which it had been covered. She did not know at such time that it had been covered with the preparation in question only two days before and twice a week since the previous May 4. There was nothing in the appearance of the floor to attract attention to it as being unsafe and dangerous to walk on or to reveal that it had been covered with a preparation that tended to make it slick, slippery, and dangerous. She knew only that the floor looked dark, 'shiny,' smooth, and slick. She was an invitee on the premises of defendants and had a right to assume that the floor was in a reasonably safe condition to walk on until confronted with knowledge to the contrary. She had walked with perfect safety over the floor in question on several occasions previous to the time she fell thereon; and she did not know it was in a slippery and dangerous and unsafe condition at the time she stepped thereon and fell and had been made so by reason of a wax preparation which had been placed thereon only two days prior. Under such circumstances, whether she was in the use of due care when she stepped on said floor and whether or not she was guilty of contributory negligence became questions for the jury. It could not be said as a matter of law that

894

she was guilty of contributory negligence or that she was not in the use of due care. Defendants' requested instructions were properly denied as far as this ground. is concerned."

In. determining the question of conflict we are bound by the Court of Appeals' conclusion as to what the facts are, but we are not bound by the conclusion that court reached by applying the law to the facts, if we have reached a different conclusion in applying the law to the same or a similar state of facts. [State ex rel. Ward v. Trimble et al., 327 Mo. 773, 778, 59 S. W. (2d). 372, 374; State ex rel. Hoyt v. Shain et al., 338 Mo. 1208, 93 S. W. (2d) 992, 993.] Without lengthening this opinion by a statement of facts in the Ilgenfritz case, we refer the reader to the published report of that case for its facts and proceed to a comparison of the facts of the two cases.

There was nothing except wax applied to the floor in both cases. The records of both cases show that the wax was properly applied to both floors, and that both floors presented a slick, shiny, glossy appearance.

In the Ilgenfritz case, concerning the condition of the floor, its appearance, and the opportunity the plaintiff had to see. and observe it, this court said:

"All of the evidence in this case was plaintiff's evidence and, considered as a whole, it shows that any one entering could see that this was a waxed floor, in good condition, and without obstruction. *It was light so that she could see* and she. did see that 'it looked like a linoleum floor that had been waxed;' that 'there was some kind of dressing on it;' that 'it looked slick;' and that it was 'shiny and slick looking.'" (Italics ours.)

Concerning the condition and appearance of the floor in the Dolly Myers case and her opportunity to see and observe it the Court of Appeals said:

"There is evidence to the effect that, at the time plaintiff and her sister entered the lobby and all during that evening, the floor presented a dark, 'shiny,' and glossy appearance and a smooth and slick looking finish, that it not only presented a smooth, 'shiny' appearance and a smooth and slick looking finish, but it was in fact smooth and slick; that it was about like glass, . . . as smooth as glass; *and that there were no obstructions of any character on it to prevent a view of it by anyone entering the lobby or to interfere with anyone in the use of it; . . . that, when she stepped inside the lobby, the light was such that she had a full view of the floor and could see it readily.*" (Italics ours.)

It is apparent, without discussion, that the condition and appearance of the two floors, as well as their visibility to anyone entering either building was practically identical in both cases. On above

state of facts, this court held in the Ilgenfritz case that, "It is clear that the waxed condition of the floor was obvious," while in the Dolly Myers case the Court of Appeals held that, "The danger of this floor was not obvious, but was more of a lurking and hidden nature." A square conflict as we see it.

It is true that the opinion of the Court of Appeals states: "That plaintiff had upon several occasions prior to the time that she fell, walked on and over the floor in question; but on such occasions there were usually large crowds on the floor and her opportunities for examination and observation of its condition were very limited. On that day in question, when she entered the lobby from the street and stepped on the floor, she fell before there was any real opportunity for inspecting it. She testified that, while she saw the floor when she entered the lobby she made no inspection of it; that it was light in the lobby and she could see the floor; that she opened the door to the lobby and walked in and her feet went out from under her and she fell; that she never looked at the floor but that she could see that it was dark and shiny."

This latter statement from the opinion of the Court of Appeals does not distinguish the case from the Ilgenfritz case. Plaintiff did not say in this latter statement that on the day she fell there was a large crowd which prevented her seeing the floor. On the contrary she said that it was light in the lobby and she could and did see the floor, and could see that it was dark and shiny. This evidence corroborates the former statement in the opinion, "that when she stepped inside the lobby, the light was such that she had a full view of the floor and could see it readily."

The Court of Appeals held that "While it appeared to be dark and 'shiny' and smooth and slick, the fact that it had been waxed and was dangerously slick was not necessarily apparent to one without any especial knowledge." The holding of the Court of Appeals that the floor was dangerously slick conflicts with the holding of this court in the Ilgenfritz case. Of course, if the floor was dangerously slick, defendants were guilty of negligence in maintaining a dangerously slick floor. What are the facts? Both floors are in public buildings to which the public was invited. Both floors were waxed. The wax was properly applied to both floors. There was no showing that either floor was slicker than waxed floors of like character are usually kept. The lights in each building were such that the floor could be readily seen by anyone entering the building. The plaintiff in both cases did see the floor upon entering the building. Several witnesses in both cases testified, in substance, that when using the floor they had to watch their step to keep from falling. In the Ilgenfritz case from 1500 to 2000 persons walked over the floor every month, and the only person who

had previously fallen had snow on his shoes. In the Dolly Myers case the floor had been used for a month prior to plaintiff's fall by many persons attending the theater, and no one slipped and fell.

It would be hard to find two cases with facts so similar. This court held in the Ilgenfritz case that the defendant was not guilty of negligence in maintaining the waxed floor in the condition shown by the evidence. In so holding, we said:

"Nor can the fact that it had been recently waxed (there was nothing to show how recently) make any difference. If it was not proper, in the exercise of due care, to allow people to walk on the floor until the wax had worn off, then it was negligent to put wax on it at all. Therefore, the question is still only whether or not it is negligence to have a waxed floor, not absolutely level under test, in such a place of business, where many customers must walk; or, in other words, is the mere fact that one person fell on a floor (in such an establishment where thousands went safely) sufficient to make a jury case of a dangerous and unsafe condition, when there was not sufficient slope in it so that any one could determine by looking at it whether it was level or not? Surely something more must be shown. Negligence is not proved by such an isolated occurrence. It must be predicated on what should have been anticipated, and not merely on what happened. [McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S. W. (2d) 693.]"

On a similar state of facts in the Dolly Myers case the Court of Appeals held that the defendants in that case were guilty of negligence. In our judgment the two cases are in direct conflict.

The Court of Appeals also held that, "It is a matter of common knowledge that the application of wax to the surface of a smooth floor, giving to it the appearance of a highly-finished floor, tends to make it slick, slippery and dangerous." It might well be said that the application of wax to a smooth floor tends to make it slick, but to hold that it is a matter of common knowledge that the mere application of wax to a smooth floor tends to make it dangerous, conflicts with the Ilgenfritz case, where this court said:

"We hold that it is not negligence to merely wax an office floor when it is obvious to all who use it that it is waxed; when no unusual amount or kind of wax is used so as to make it slicker than waxed floors of like character are usually kept; when the floor is so nearly level that no one could determine that it was not level without making some kind of a test; and when persons using it are only required to walk over it in an ordinary careful way in order to keep from falling."

A slick floor is not a dangerous floor unless it is so slick that a person exercising ordinary care cannot use it with safety. In the Ilgenfritz case we said:

"Every one is familiar with floor wax and its effect on floors, every one knows that a waxed floor must be walked over somewhat differently from a rough floor, and she was required to exercise the reasonable care that anyone could see was required by the circumstances for her own safety. However, whether she was careful or not, or whether her conduct was contributory negligence or not, makes no real difference, because there is no evidence to show that defendant was guilty of any negligence and even if plaintiff was careful, defendant was only liable if it was negligent. It was not negligent unless there was something on the floor that in the exercise of due care should not have been there. This evidence does not show that there was. To hold defendant liable here would make it liable as an insurer and not because of negligence."

If the defendant in the Ilgenfritz case was not guilty of negligence because there was nothing on the floor that, in the exercise of due care, should not have been there, for the same reason the defendants in the Dolly Myers case were not guilty of negligence because the only thing maintained on both floors was wax properly applied. The contrary holding by the Court of Appeals creates a conflict.

Relators claim conflict with other cases which they cite. In our judgment the conflict of the Court of Appeals' opinion with the Ilgenfritz case is so clearly apparent, we deem a discussion of the other cases unimportant.

The record and opinion of the Court of Appeals should be quashed. It is so ordered.

All concur, except *Hays, J.*, absent.